# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2930

_____

Paul T. Krispin, Jr.,                    *
                                         *
          Appellant,                     *
                                         *
     v.                                  *
                                         *
The May Department Stores Company,       *
                                         *
          Appellee.                      *

_____

No. 99-3002                    Appeals from the United States
                               District Court for the
_____                    Eastern District of Missouri.

Scott Matheis, individually and on       *
behalf of all others similarly situated, *
                                         *
          Appellee,                      *
                                         *
     v.                                  *
                                         *
The May Department Stores Company,       *
doing business as Famous-Barr Co.,       *
                                         *
          Appellant.                     *
_____                  *
                                         *
Paul T. Krispin, Jr.,                    *
                                         *
          Appellee,                      *
                                         *

v.                                        *
                                          *
The May Department Stores Company,        *
                                          *
        Appellant.                        *
                    _____

            Submitted:  April 10, 2000

              Filed:  July 28, 2000
                    _____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and GOLDBERG,[1]
        Judge.
                    _____

WOLLMAN, Chief Judge.

        Paul T. Krispin, Jr., who, along with Scott Matheis, brought claims against The
May Department Stores Company (the store) under Missouri state law, appeals from
the district court's determination that the National Bank Act (NBA), 12 U.S.C. §§ 85
& 86, completely preempts his claims, from its adverse entry of summary judgment,
and from its denial of leave to amend Krispin's complaint to state a claim under the
NBA.  The store cross-appeals, arguing that the court should not have remanded
several of Matheis's claims to state court.  We reverse and remand.

                              **I.**

        Krispin and Matheis (appellants) had Famous-Barr credit cards issued by the
store prior to 1996.  Their accounts were governed by agreements that stated that they

_____

        [1]The Honorable Richard W. Goldberg, Judge, United States Court of
International Trade, sitting by designation.

were governed by Missouri law and that provided for finance charges "which will not be in excess of that permitted by law." Missouri law prohibits delinquency fees of more than $10, or $5 if the total monthly installment is less than $25. See Mo. Rev. Stat. § 408.330 (1994). The credit agreements allowed for unilateral modification by the store on at least fifteen days' notice to cardholders.

In 1996, the store sent letters styled "IMPORTANT NOTICE" to its credit card customers announcing that, "[e]ffective immediately, credit is being extended by the May National Bank of Arizona" (the bank), and stating that late payment fees would now be "up to $12.00, or as allowed by law." Subsequently, similar notices indicated that late fees would be "$15, or as allowed by law. This varies from state to state." These notices contained little additional information and did not purport to change any other terms of the agreements, including the choice of law provision. The bank was not a party to the original credit agreements.

At the time of the 1996 notices, the store had assigned all its credit accounts, and transferred all authority over the terms and operation of those accounts, to the bank, an Arizona corporation recently created by the store. Not long after this transfer the bank began charging delinquent cardholders, including those who had entered into agreements with the store before 1996, late fees of $15.

Appellants filed separate state class action lawsuits against the store, raising various claims related to their allegation that the late fees exceeded the amount permitted by Missouri law. The store removed the actions to federal court on the grounds that the claims amounted to allegations of usury against the bank and that, as such, they were completely preempted by the NBA. The cases were consolidated.

The federal district court assumed jurisdiction and entered summary judgment for the store on all of Krispin's claims and two of Matheis's claims, remanding the remainder of Matheis's claims to state court. The district court did not permit either

plaintiff to amend his complaint to state a claim under the NBA. Krispin appeals from the complete preemption determination and from the denial of leave to amend. He also seeks leave to file a motion under Federal Rule of Civil Procedure 60(a) requesting the district court to reconsider its decision not to remand his breach of contract claim to state court. Matheis has not filed a brief in this appeal, but requests permission to join in Krispin's brief, which we grant. The store cross-appeals the decision to remand four of Matheis's claims to state court.

## II.

### A.    Federal Jurisdiction

Appellants first argue that the district court erred in exercising removal jurisdiction based on the doctrine of complete preemption. We review this question of law de novo. See Husmann v. TWA, Inc., 169 F.3d 1151, 1152 (8th Cir. 1999).

Federal district courts may exercise removal jurisdiction only where they would have had original jurisdiction had the suit initially been filed in federal court. See 28 U.S.C. § 1441(b). Removal based on federal question jurisdiction, as in this case, is generally governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998). A narrow exception to this general rule, however, is the doctrine of "complete preemption," under which the preemptive force of certain federal statutes is deemed so "extraordinary" as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); Magee, 135 F.3d at 601. We have held that sections 85 and 86 of the National Bank Act completely preempt state law claims of usury brought against a national bank. See M. Nahas & Co., Inc. v. First Nat. Bank of Hot Springs, 930 F.2d 608, 611 (8th Cir. 1991).

-4-

The NBA permits any national banking association to charge interest at the rate allowed by the laws of the state in which the bank is located. See 12 U.S.C. § 85. Thus, national banks may charge out-of-state credit cardholders the interest rate allowed by the bank's home state even if that rate would otherwise be illegal in the state where the cardholders reside. See Marquette Nat'l Bank v. First of Omaha Svc. Corp., 439 U.S. 299, 313-19 (1978). For purposes of this rule, "interest" includes late payment fees. See Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 744-47 (1996). Section 86 of the NBA provides the exclusive remedy for violations of section 85. Because appellants do not dispute that the bank is a national banking association as defined by the NBA, see 12 U.S.C. §§ 21, 37, the question of complete preemption in this case turns on whether appellants' suit against the store actually amounted, at least in part, to a state law usury claim against the bank.

Appellants stress that their complaints focused exclusively on the store, the only entity with which they had ever entered into credit agreements. They also emphasize that, even after their credit accounts were transferred to the bank in 1996, the store remained substantially involved in the collection process because it purchased the bank's receivables on a daily basis. The store in turn asserts, and the district court agreed, that the 1996 assignment was fully effective to cause the bank, and not the store, to be the originator of appellants' accounts subsequent to that time. The store characterizes its continuing role in account collection as that of an assignee, and argues that its purchase of the bank's receivables does not alter the fact that appellants' accounts are now controlled by the bank. We agree with the store.

The bank, a wholly-owned subsidiary of the store, with which it is required to maintain arms'-length transactions, was established specifically for the purpose of taking over the store's credit card operations. To this end, shortly after the bank's creation, the store and the bank entered into an agreement completely transferring authority over all customer credit accounts. This agreement required the bank to continue to extend credit to the store's pre-existing cardholders "[s]ubject to . . . the

terms and conditions in the Credit Card Agreement" that such cardholders had previously signed. Although appellants acknowledge that their original credit card agreement permitted unilateral modification, they argue, citing a case from the Tenth Circuit, that "a third party may not be added to a contract without consent of both original parties." Denver Metropolitan Ass'n v. Journeyman Plumbers & Gas Fitters Local No. 3, 586 F.2d 1367, 1370 (10th Cir. 1978). Appellants note that they never saw the agreement between the store and the bank, but instead simply received the aforementioned notice informing them that "[e]ffective immediately, credit is being extended by the May National Bank of Arizona."

We find this argument unavailing to defeat federal jurisdiction. The 1996 account transfer was not, in our view, an "addition" of a party to the contract, as discussed in Denver Metropolitan Association – a case presenting the question whether a collective bargaining agreement prohibited employers who were not members of a signatory trade association from contributing to certain employee trust funds. See id. at 1369-71. Rather, the transfer in the instant case was an assignment – a shifting of contractual rights and duties to another. See In re Food Barn Stores, Inc., 107 F.3d 558, 561 n.5 (8th Cir. 1997) (citing Metropolitan Airports Comm'n v. Northwest Airlines, Inc., 6 F.3d 492, 495 n.4 (7th Cir. 1993)).

In general, unless the original contract or a relevant statute specifies otherwise, a party may assign contractual rights without notice. See United States v. Doe, 940 F.2d 199, 204-05 (7th Cir. 1991); Restatement (2d) Contracts § 317 (1979); 4 Corbin, Contracts § 870 (1951). We have so stated in a previous case arising out of Missouri, see Imperial Assur. Co. v. Livingston, 49 F.2d 745, 751 (8th Cir. 1931), and Missouri courts appear to have similarly held, see Milliken-Helm Comm'n Co. v. C.H. Albers Comm'n Co., 147 S.W. 1065, 1066-67 (Mo. 1912); cf. Kenneth D. Corwin, Ltd. v. Mo. Med. Serv., 684 S.W.2d 598, 600 (Mo. App. 1985). The pre-1996 credit agreement between the store and its customers did not explicitly prohibit assignment, and we are unaware of any Missouri statute restricting the assignability of contracts.

Cf. Mo. Rev. Stat. §§ 431.160, 431.170 (1992) (establishing rights and duties of assignors and assignees). Thus, the agreement between the store and the bank effected a valid assignment to the bank of whatever contractual rights and duties the store bore toward its pre-existing credit card customers.

Moreover, the store's purchase of the bank's receivables does not diminish the fact that it is now the bank, and not the store, that issues credit, processes and services customer accounts, and sets such terms as interest and late fees. Thus, although we recognize that the NBA governs only national banks, cf., e.g., Green v. H&R Block, Inc., 981 F.Supp. 951, 955 (D. Md. 1997), in these circumstances we agree with the district court that it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store), in determining whether the NBA applies. Cf. FDIC v. Lattimore Land Corp., 656 F.2d 139, 147-49 (5th Cir. Unit B Sept. 1981) (stating, in context of determining whether NBA governs loan assigned by originating entity to entity in another state, that "[t]he non-usurious character of a note should not change when the note changes hands"). Accordingly, for purposes of deciding the legality of the late fees charged to appellants' credit accounts, we find that the real party in interest is the bank, not the store.[2] Appellants' state law usury claims against the store therefore implicate the NBA, and the district court's decision to exercise removal jurisdiction based on the complete preemption doctrine was not error.

---

[2]Appellants' arguments that they generally received inadequate notice of the 1996 transfer of their accounts from the store to the bank, and that incidental changes in the terms of the pre-1996 agreement attendant to this otherwise valid assignment violated the agreement's modification clause or other clauses, raise separate issues properly addressed in the context of appellants' breach of contract claims against the store. We express no view on the merits of these arguments.

**B.     Denial of Leave to Amend**

The federal rules state that permission to file a first amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Denial of leave to amend is justified only in the limited circumstances of "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987). We review a denial of leave to amend for abuse of discretion. See Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000).

Appellants' primary argument before the district court was that the case should be remanded to state court for lack of subject matter jurisdiction. However, in response to the store's motion for summary judgment they also argued, in the alternative, that if the court found the NBA to completely preempt their state law usury claims then it should permit them to amend their complaint to state a claim against the bank under the NBA. The district court rejected this request, concluding that appellants did "not allege that the Bank's late fees exceed the rate allowed under Arizona law."[3]

Appellants did not set forth an NBA claim in their pleadings, and generally in such circumstances "[t]he plaintiff must bear the consequences of waiting to address the court's ruling post-judgment." Briehl v. General Motors Corp., 172 F.3d 623, 629 (8th Cir. 1999). In this case, however, appellants faced a Hobson's choice: risk dismissal for failure to invoke the NBA, or plead an NBA claim, perforce defeating

---

[3]The district court also asserted that the NBA had not been violated. This assertion, although it appears to be a judgment on the merits of appellants' NBA argument, was not supported by any analysis, and we agree with appellants that it was more in the nature of a dismissal for failure to state a claim. We believe that such a disposition was unwarranted, as appellants have presented a non-frivolous NBA claim based on Arizona's usury statute, which limits late fees to "the maximum rate set by contract." Az. St. § 44-1205(C)(4).

their own main argument that the case should remain in state court based on a lack of federal question jurisdiction.

The district court could have alleviated this problem by recognizing appellants' attempt to present their NBA argument in the alternative in their memorandum in opposition to summary judgment. Cf. Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1240-41 (8th Cir. 1995) (where party opposing removal had been ordered to amend its complaint to assert a federal claim, in order to avoid creating a Hobson's choice the court did not deem the question of removal jurisdiction to have been rendered moot). Because of the harsh consequences to appellants, we conclude that the court's failure to do so constituted an abuse of discretion. In the interest of justice, and to facilitate the hearing of claims on their merits, appellants should have been permitted to amend their complaint. See Fed. R. Civ. P. 15(a).

## C.    Remand of Matheis's State Law Claims

In light of its disposition of appellants' state law usury claims, the district court declined to exercise supplemental jurisdiction over Matheis's related claims for breach of contract, breach of duty of good faith and fair dealing, misrepresentation, unjust enrichment, and civil conspiracy. It thus remanded these claims for consideration by the state court. The store characterizes these claims as nothing more than further variations on the state law usury theme, and it contends that the district court should have retained jurisdiction over them. The store therefore urges us to reverse the decision to remand Matheis's claims to state court and to instruct the district court to enter summary judgment on them.

If the grant of summary judgment on the Missouri usury claims had been proper, remand of Matheis's additional claims would likely have been justified as well, since a district court has discretion to reject supplemental jurisdiction over state claims where the court has already "dismissed all claims over which it has original jurisdiction." 28

U.S.C. § 1367(c)(3). Because we now remand the case for consideration of the NBA claim, however, and because the district court's remand order was not based on any of the grounds set forth in 28 U.S.C. § 1447(c), we conclude that the court should reassert supplemental jurisdiction over the claims it remanded to state court. See St. John v. Intern. Ass'n of Machinists and Aerospace Workers, 139 F.3d 1214, 1216-19 (8th Cir. 1998); In re Otter Tail Power Co., 116 F.3d 1207, 1212-14 (8th Cir. 1997). We reject the store's argument that these claims, in their entirety, amount to nothing more than restatements of appellants' usury arguments. Consequently, we leave it to the district court, in the exercise of its supplemental jurisdiction, to determine the merits of these claims.

Finally, we conclude that Krispin's request for leave to file a Rule 60(a) motion with the district court during the pendency of this appeal is rendered moot by our issuance of this decision. Krispin is now free to file such a motion with the district court without our permission, as Rule 60(a) permits any party to request correction of clerical mistakes or errors arising from oversight or omission "at any time." Fed. R. Civ. P. 60(a); see United States v. Mansion House Center, 855 F.2d 524, 527 (8th Cir. 1988).

For the foregoing reasons, we reverse the order of summary judgment and remand the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.