# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3423

_____

Alvin L. Phipps; Linda L. Phipps;      *
John A. St. Clair; Elizabeth R. St. Clair; *
Shawn V. Starkey; Lorene A. Starkey,   *
                                 *

       Appellants,              *
                                 *

    v.                         *
                                 *

Federal Deposit Insurance Corporation; *
GMAC-Residential Funding         *
Corporation, a Minnesota Corporation;  *   Appeal from the United States
Residential Funding Mortgage Securities*   District Court for the Western
II, Inc., a Minnesota corporation; Chase *   District of Missouri.
Manhattan Bank, as Indenture Trustee  *
of the GMAC-RFC and RFMS        *
Securitized Trusts; Wilmington Trust   *
Company, as Owner Trustee of the     *
GMAC-RFC and RFMS Securitized    *
Trusts; Homecomings Financial      *
Network, Inc., a Delaware corporation;  *
Household Finance, Inc., a Delaware   *
corporation; Does, 1 through 25,      *
                                 *

       Appellees.             *

_____

Submitted: March 17, 2005
Filed: July 28, 2005

_____

Before RILEY, BOWMAN, and GRUENDER, Circuit Judges.
_____

RILEY, Circuit Judge.

The plaintiffs, Alvin and Linda Phipps (Phipps), John and Elizabeth St. Clair (St. Clair), and Shawn and Lorene Starkey (Starkey) filed a putative class action lawsuit in Missouri state court, seeking to recover allegedly unlawful fees charged on second mortgage loans by Guaranty National Bank of Tallahassee (GNBT). GNBT and other defendants removed to the federal district court,[1] which denied the plaintiffs' motion to remand and granted the defendants' motions to dismiss. We affirm.

## I.    BACKGROUND

The plaintiffs purport to represent a class of Missouri borrowers who took out second mortgage loans from GNBT, a federally chartered national bank located in Florida and regulated by the Office of the Comptroller of Currency (OCC).[2]  The

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]After briefing on appeal, the Federal Deposit Insurance Corporation (FDIC) was appointed as Receiver for GNBT, pursuant to 12 U.S.C. §§ 191 and 1821(c), and was granted leave to substitute itself for GNBT as an appellee in this case. The FDIC substitution clearly establishes federal court jurisdiction to resolve this case. "Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ('FIRREA'), suits to which the FDIC is party are generally deemed to arise under the laws of the United States and, as such, should be litigated in federal court." Dewey v. Lutz, 930 F.2d 597, 598 (8th Cir. 1991). Indeed, 12 U.S.C. § 1819(b)(2)(A) provides, with certain exceptions not germane to this appeal, that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." The FDIC's appointment as receiver "conferred instant subject matter jurisdiction over the case." Heaton v. Monogram Credit Card Bank of Ga., 297 F.3d 416, 426 (5th Cir. 2002).

plaintiffs filed a putative class action in Missouri state court against GNBT, and also against GMAC-Residential Funding Corporation (RFC), Household Finance Corporation III (Household), and other defendants. The plaintiffs alleged GNBT charged them unlawful fees on their second mortgage loans, in violation of Missouri's Second Mortgage Loan Act (SMLA), Mo. Rev. Stat. §§ 480.231-.241, and later sold the second mortgage loans to the other defendants, including RFC and Household. The plaintiffs claim GNBT unlawfully charged loan origination, loan discount, underwriting, and application fees; settlement fees; abstract fees; title search and examination fees; and document review fees, "together with charging high interest rates all as part of a scheme to make high-cost loans to Missouri borrowers, as well as borrowers across the country." The plaintiffs also claim the loan origination and loan discount fees actually were "finder's fees" paid to a third party, Equity Guaranty LLC (Equity), although the plaintiffs signed Settlement Statements (HUD-1s) with the Department of Housing and Urban Development (HUD) stating these fees were paid to GNBT. The plaintiffs further claim GNBT and Equity conspired "to give the appearance of making these loans through a national bank . . . to . . . avoid the consumer protection laws of the states."

In their state court petition (complaint), the plaintiffs sought a refund of the allegedly unlawful fees and interest paid and also sought to enjoin the defendants from collecting interest on the loans. Phipps allege they were charged 16.99% interest on a 15-year loan, and St. Clair and Starkey claim they were charged 11.99% interest on 25- and 15-year loans, respectively. The district court noted Missouri's usury law currently caps interest rates at 10%. See Mo. Rev. Stat. § 408.030.1. However, the plaintiffs strenuously argue their claims are based on unlawful *fees* charged, not unlawful *interest*.

The defendants removed the case to federal court based on federal question jurisdiction. The plaintiffs sought remand, claiming they had not stated a claim for excessive interest against the defendants, so federal jurisdiction did not exist. In

response, the defendants argued the plaintiffs' claims are usury claims against a national bank. The defendants contended federal law preempts the claims, because the fees charged were actually "interest" under the broad definition afforded that term under federal law. Thus, the defendants argued the federal court had jurisdiction. Further, the defendants moved to dismiss the plaintiffs' claims, because the complaint did not state a claim for which relief could be granted. Household also moved to dismiss, claiming the plaintiffs lacked standing to sue Household, as it did not hold any of the plaintiffs' mortgages.

The district court denied the plaintiffs' motion to remand, concluding the loan origination and discount fees fit within the OCC's definition of interest, so under federal law, the plaintiffs' claims were for interest, not fees. The court ruled federal statutes governing national banks create an exclusive cause of action against national banks for usury; thus, no state law cause of action exists. Next, because the plaintiffs attempted to assert a usury claim against a national bank based upon the SMLA, a Missouri statute, the district court dismissed the complaint for failure to state a claim for which relief could be granted. Finally, the court concluded Household's motion to dismiss was moot, but granted the motion, because the claims against Household derived from those against GNBT.

## II.    DISCUSSION

"We review the district court's denial of a motion to remand and its dismissal of the complaint on grounds of preemption under a de novo standard." Gore v. TWA, 210 F.3d 944, 948 (8th Cir. 2000). As to the motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), we must accept the plaintiffs' factual allegations as true and grant all reasonable inferences in the plaintiffs' favor. MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 364 F.3d 908, 909 (8th Cir. 2004). We may affirm the district court's dismissal on any basis supported by the record. In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2001) (citation omitted).

## A.    Preemption

A defendant may remove a state law claim to federal court when the federal court would have had original jurisdiction if the suit originally had been filed there. See 28 U.S.C. § 1441(b).  Removal based on federal question jurisdiction is usually governed by the "well-pleaded complaint" rule.  Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000).  This rule provides that federal jurisdiction may be invoked "only where a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Id.  The rule also "makes the plaintiff the master of the claim," allowing the plaintiff to "avoid federal jurisdiction by exclusive reliance on state law."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  An independent corollary to this general rule is the "complete preemption" doctrine, "under which the preemptive force of certain federal statutes is deemed so 'extraordinary' as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception."  Krispin, 218 F.3d at 922 (citing Caterpillar Inc., 482 U.S. at 393).  Only claims falling within the preemptive scope of a federal statute are considered to invoke federal question jurisdiction, and the presence of even a single federal claim gives the defendant the right to remove an entire case to federal court.  Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996).

The National Bank Act (NBA), 12 U.S.C. §§ 21-216d, authorizes a national bank "to charge interest at the rate allowed by the laws of the state in which the bank is located."  Krispin, 218 F.3d at 922 (citing 12 U.S.C. § 85).[3]  The NBA preempts actions challenging the lawfulness of the interest charged by a national bank.  In Beneficial National Bank v. Anderson, 539 U.S. 1, 11 (2003), the Supreme Court held sections 85 and 86 of the NBA "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is

---

[3]Because GNBT is located in Florida, it is allowed to charge interest at the rate allowed by Florida law.  Florida's usury rate is currently set at 18%.  See Fla. Stat. Ann. § 687.03(1).

exclusive, even when a state complainant . . . relies entirely on state law." The Court reasoned "[u]niform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'" Id. at 10 (citation omitted). "Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws." Id. at 11; see also Krispin, 218 F.3d at 922 ("We have held that sections 85 and 86 . . . completely preempt state law claims of usury brought against a national bank.").

As the district court observed, the remand issue here boils down to whether the plaintiffs brought a claim of unlawful interest charged by the defendants, notwithstanding the plaintiffs' protestations their claims focused on unlawful fees. The plaintiffs argue the loan origination and discount fees were merely "finder's fees" paid to Equity, which they contend are excluded from the OCC's definition of interest. However, we are required to look beyond the plaintiffs' artful attempts to characterize their claims to avoid federal jurisdiction, M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs, 930 F.2d 608, 611-12 (8th Cir. 1991), to determine whether the plaintiffs actually allege unlawful interest claims without expressly using the word "interest."

For purposes of 12 U.S.C. § 85, interest is defined as "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). Among other things, interest includes certain *fees* associated with credit extension or availability, such as "numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees . . . , overlimit fees, annual fees, cash advance fees, and membership fees." Id. However, interest "does not ordinarily include appraisal fees, premiums and

-6-

commissions attributable to insurance guaranteeing repayment of any extension of credit, finder's fees, fees for document preparation or notarization, or fees incurred to obtain credit reports." Id. If any of the fees charged in the present case fall within the definition of interest, the NBA preempts those claims and removal of the entire case was proper. See Gaming Corp. of Am., 88 F.3d at 543.

The Supreme Court has held various fees, such as late fees, are not excluded from the NBA's definition of interest simply because the fees do not vary depending on the amount owed or the length of the delay. Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 745 (1996). The Court found no indication from prior decisions that interest is "limited to charges expressed as a function of time or of amount owing." Id. The Court explained "[i]t would be surprising to find such a requirement in the Act, if only because it would be so pointless. Any flat charge may, of course, readily be converted to a percentage charge–which was indeed the basis for 19th-century decisions holding that flat charges violated state usury laws establishing maximum 'rates.'" Id. at 745-46. The Court concluded it was rational to consider as interest those expenses "assessed for simply making the loan." Id. at 741-42. The Court opined the OCC's definition draws a reasonable line between (1) payments compensating creditors for extending credit or making a line of credit available, and (2) "all other payments." Id. at 741. Several courts, including our own, have held charges similar to those in this case are considered interest. See, e.g., Fisher v. First Nat'l Bank, 548 F.2d 255, 258-61 (8th Cir. 1977) (cash-advance fee considered interest); Cronkleton v. Hall, 66 F.2d 384, 387 (8th Cir. 1933) (commissions and bonuses considered interest); see also Greenwood Trust Co. v. Mass., 971 F.2d 818, 825 (1st Cir. 1992) (late fees and other "kindred charges" considered interest); Am. Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 787-88 (9th Cir. 1982) ("compensating balance requirement" as condition for receiving loan considered interest). But see Hancock v. Bank of Am., 272 F. Supp. 2d 608, 610 (W.D. Ky. 2003) (fax fee not considered interest); Video Trax v. NationsBank, N.A., 33 F. Supp. 2d 1041, 1059 (S.D. Fla. 1998) (bank overdraft fee not considered interest).

In this case, most, if not all, the fees the plaintiffs claim are unlawful fall within the OCC's definition of interest. Clearly, the loan origination and discount fees qualify as interest. Origination fees are "charged by a lender for preparing and processing a loan." Black's Law Dictionary 648 (8th ed. 2004). Unlike the charges normally incurred regardless of whether a loan is made, a loan origination fee is one assessed after a loan is approved. Similarly, a loan discount fee is assessed by the lender to reduce the interest rate charged on a loan. As the district court noted, the OCC has reasoned that fees charged for opening an account with a bank are interest, because these fees are payments made to compensate a creditor for extending credit rather than a charge "'specifically assigned' to cover the cost of an activity or service." See OCC Interpretive Letter No. 803, 1998 WL 320183, at *3 (citation omitted). The HUD-1 Settlement Statements the plaintiffs signed list the loan origination, loan discount, underwriting, and application fees under the subheading "Items Payable in Connection with Loan," further convincing us these alleged fees actually were payments compensating the creditor for an extension of credit. See Smiley, 517 U.S. at 741-42. Furthermore, the instructions for completing the Settlement Statements provide that Line 801, the line listing the loan origination fee, "is used to record the fee charged by the Lender for processing or originating the loan," while "Line 802 is used to record the loan discount or 'points' charged by the Lender." 24 C.F.R. § 3500, App. A. The loan origination and loan discount fees, as well as the underwriting and application fees, clearly were charged as compensation to GNBT for extending credit, rendering these charges interest within the OCC's definition.

The plaintiffs' characterization of the various fees as non-interest "finder's fees" paid to Equity is unavailing. Courts must look at "the originating entity (the bank), and not the ongoing assignee . . . in determining whether the NBA applies." Krispin, 218 F.3d at 924; see 12 C.F.R. § 7.1004(a) ("A national bank may use the services of, and compensate persons not employed by, the bank for originating loans."). In this case, the plaintiffs signed numerous loan documents in which they

acknowledged GNBT was the lender that funded and made the loans and charged the fees. And the plaintiffs' complaint repeatedly states GNBT was the lender. The district court correctly disregarded the plaintiffs' "finder's fees" argument.

The plaintiffs argue our court has no jurisdiction to review whether the charges at issue in this case actually were interest, because the plaintiffs dispute the assertion that the charges were interest. The plaintiffs' complaint did not include claims for usurious interest, so the issue whether the claims involve interest is disputed. The plaintiffs contend removal jurisdiction does not exist unless a plaintiff's claims *indisputably* are based on excessive interest. Any assertion that a federal court's jurisdiction somehow depends upon a lack of objection by a litigant is misguided. Subject matter jurisdiction is not controlled by the desires of one of the parties, see Dale v. Weller, 956 F.2d 813, 815 (8th Cir. 1992) (noting "subject matter jurisdiction cannot be conferred by the parties by waiver or otherwise"), and "[a] plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists," Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996). As noted above, we simply are not required to look only to the plaintiffs' artful pleading and characterizations of the evidence to determine our jurisdiction. M. Nahas & Co., 930 F.2d at 612. The district court properly concluded some of the fees the plaintiffs challenge actually were interest within the OCC's definition. Accordingly, the court rightly concluded federal law preempted those claims and provided removal jurisdiction.

### B. Dismissal

Once the district court determined the plaintiffs' claims are preempted, it was a short step to conclude these claims must be dismissed. The court found it "impossible . . . to retain jurisdiction but not dismiss the case. If the [plaintiffs'] case is completely preempted by federal law, the claims are anomalous and must be dismissed. If the Court declines jurisdiction, the Court lacks authority to rule on the motions to dismiss and they are thus moot." As the court stated, the plaintiffs'

"complaint attempts to state what does not exist, to wit: a usurious claim against a national bank premised on Missouri law. This is not a claim for which relief may be granted." Because "there is . . . no such thing as a state-law claim for usury against a national bank," Beneficial, 539 U.S. at 11, the district court properly dismissed the plaintiffs' claims.

Even if we assume all the fees the plaintiffs contest could not be considered interest within the OCC's definition and, therefore, are not preempted, any claims based on those fees would be considered removable under 28 U.S.C. § 1441(c) as part of the court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Although the district court determined it could not reach these claims based upon its ruling dismissing the plaintiffs' complaint, the record supports dismissal under the SMLA. See K-tel, 300 F.3d at 889 (stating we may affirm dismissal on any basis supported by the record). The SMLA requires, as an essential element of a claim thereunder, that the *interest rate* a bank charges exceed the rate limits provided by Missouri statute. "To state a civil claim under these provisions of the SMLA, [the plaintiffs] had to plead facts establishing that: (1) they obtained a secondary mortgage loan; (2) an unlawful rate of interest was charged on the loan; and (3) the fees charged in connection with the loan were not authorized by Section 408.233." Avila v. Cmty. Bank of Va., 143 S.W.3d 1, 4-5 (Mo. Ct. App. 2003). The SMLA "shall not apply to any loans on which the rate of interest . . . charged [is] lawful . . . ." Mo. Rev. Stat. § 408.232.4. The plaintiffs argue they do not allege a claim for unlawful interest; therefore, they have failed to state a claim under Missouri law for which relief may be granted.

Furthermore, even assuming the plaintiffs attempted to claim they were charged an unlawful interest rate, they would not have a claim for which relief could be granted, because GNBT, as a national bank from Florida, was allowed to "export" the maximum interest rate it could have charged under Florida law, even if that rate would be unlawful in Missouri. See Smiley, 517 U.S. at 743-44; Marquette Nat'l

Bank of Minneapolis v. First of Omaha Serv. Corp., 439 U.S. 299, 314, 318-19 (1978); Krispin, 218 F.3d at 922. At the time of the transactions in this case, the maximum interest rate permissible under Florida law was 18%, see Fla. Stat. Ann. § 687.03(1), so none of the plaintiffs were charged an unlawful interest rate. Accordingly, even if the plaintiffs asserted they were charged an illegal interest rate, the plaintiffs would have failed to make out a valid SMLA claim, and dismissal of their complaint would have been proper.

Additionally, for the reasons stated in the district court's opinion, we affirm its dismissal of Household.

## III.   CONCLUSION

We affirm the district court's order denying the plaintiffs' motion to remand and dismissing the plaintiffs' complaint.

_____