# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-3129

_____

| | | |
|---|---|---|
| Mamot Feed Lot and Trucking, | * | |
| A Nebraska Partnership; Eugene | * | |
| P. Sonnenfeld, An Individual and | * | |
| On Behalf of a Class Similarly | * | |
| Situated; John Richter, Husband | * | |
| and On Behalf of a Class Similarly | * | |
| Situated; Rosemary Richter, Wife | * | |
| and on Behalf of a Class Similarly | * | |
| Situated; Dennis Land, Husband and | * | |
| on Behalf of a Class Similarly | * | |
| Situated; Rita Land, Wife and on | * | Appeal from the United States |
| Behalf of a Class Similarly | * | District Court for the |
| Situated; Dave Vest, Husband | * | District of Nebraska. |
| and on Behalf of a Class Similarly | * | |
| Situated; Mary Vest, Wife | * | |
| and on Behalf of a Class Similarly | * | |
| Situated; Robert E. Smith, | * | |
| Husband and on Behalf of a Class | * | |
| Similarly Situated; Teresa R. | * | |
| Smith, Wife and on Behalf of | * | |
| a Class Similarly Situated; Ed | * | |
| Boltz, An Individual and on Behalf | * | |
| of a Class Similarly Situated; | * | |
| Ray Doggett, An Individual | * | |
| and on Behalf of a Class Similarly | * | |
| Situated, doing business as | * | |
| Doggett Hay Coach; Eldon Dubas, | * | |
| An Individual and on Behalf of | * | |
| a Class Similarly Situated; Dale | * | |
| Brabander, Husband and on Behalf | * | |
| of a Class Similarly Situated; | * | |

Delores Brabander, Wife and on          *
Behalf of a Class Similarly             *
Situated; Jerry Rowse, An               *
Individual and on Behalf of a           *
Class Similarly Situated,               *
                                        *
        Appellants,                     *
                                        *
    v.                                  *
                                        *
Scott Hobson, Individually and in       *
His Official Capacity, as Former        *
President of Exchange Bank;             *
Exchange Bank, A Federally              *
Insured State-Charter Bank,             *
also known as Exchange Bank             *
of Gibbon Collectively;                 *
Exchange Company, A Nebraska            *
Bank Holding Company; Dennis            *
Schardt, Individually and in            *
His Official Capacity; Susan            *
Schardt, Individually and in            *
Her Official Capacity; Brian            *
Schardt, Individually and in            *
His Official Capacity; Tom              *
Baxter, Individually and in             *
His Official Capacity; Sue              *
Bolin, Individually and in              *
Her Official Capacity; Allissa          *
Kroll Bombeck, Individually and in      *
Her Official Capacity; Janet Carr,      *
Individually and in Her                 *
Official Capacity; Linda Clevenger,     *
Individually and in Her Official        *
Capacity; Craig Dewalt,                 *
Individually and in His Official        *
Capacity; Vaughn Duncan,                *

Individually and in His Official     *
Capacity; Stephen England,     *
Individually and in His Official     *
Capacity; Kim Hannon,     *
Individually and in Her Official     *
Capacity; Roger Heffelfinger,     *
Individually and in His Official     *
Capacity; Michelle High,     *
Individually and in Her Official     *
Capacity; Tim Horacek,     *
Individually and in His Official     *
Capacity; Kevin Hynes,     *
Individually and in His Official     *
Capacity; Heather Jurgens,     *
Individually and in Her Official     *
Capacity; Jeff Konen,     *
Individually and in His Official     *
Capacity; Dee Krolikowski,     *
Individually and in Her Official     *
Capacity; Sheri Lyons,     *
Individually and in Her Official     *
Capacity; Pat Manfull,     *
Individually and in Her Official     *
Capacity; Patrick McGuire,     *
Individually and in His Official     *
Capacity; Pat Meyer,     *
Individually and in Her Official     *
Capacity; Rebecca Rathjen,     *
Individually and in Her Official     *
Capacity; Deb Slack,     *
Individually and in Her Official     *
Capacity,     *
    *
       Appellees.     *

_____

Submitted: May 16, 2008
Filed: August 26, 2008

_____

Before RILEY, HANSEN, and ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Appellants were each either customers of the Exchange Bank of Gibbon (Bank) or have been sued by the Bank. The appellants brought this action as a class action against the Bank, its holding company, and various shareholders, officers, and employees of the Bank, following the criminal indictment of Scott Hobson, the Bank's president, for defrauding the bank of nearly one million dollars. The appellants brought federal usury and antitying claims against the Bank based on Hobson's actions, relying on 12 U.S.C. §§ 85, 86 (the National Bank Act); 12 U.S.C. §§ 1972, 1975; and 12 U.S.C. § 1831d (the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA)). All of the appellees except Hobson (collectively the "Bank Defendants") filed a joint motion to dismiss for want of jurisdiction as to the National Bank Act claim and for failure to state a claim on the remaining claims, which the district court[1] granted. The Appellants appeal, and we affirm.

I.

Exchange Bank is a federally-insured, state-chartered bank located in Nebraska. Although it is less than clear from the parties' district court filings or the briefs on appeal, apparently (and allegedly) Scott Hobson, as the President of the Bank,

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

misappropriated assets of the Bank, misstated the value of collateral on loans, misstated the Bank's assets on its balance sheet, and diverted loan payments made by customers to other accounts. Appellants Dennis and Rita Land, Eugene Sonnenfeld, Dave and Mary Vest, Robert and Teresa Smith, Eldon Dubas, Jerry Rowse, Dale and Delores Brabander, Ed Boltz, and Ray Doggett were all customers of the Bank.[2] Appellant Mamot Feed Lot and Trucking is not a customer of the Bank but purchased hay from Appellant Sonnenfeld. Apparently, the hay served as collateral for Sonnenfeld's loan with the Bank, and the Bank has brought an action in state court against Mamot Feed Lot and Trucking based on its security interest in Sonnenfeld's crop.

Following Hobson's indictment on fraud charges, the Appellants filed this action in federal court claiming that the Bank Defendants had charged them usurious interest. The basis for the usurious interest claim was that "Hobson, without permission, contrary to the documents, but with the full approval of Defendant Exchange Bank of Gibbon, et. al. deliberately and intentionally misstated or took collateral of Plaintiffs, for his or others [sic] benefits, misstated the value of the collateral on the books and records of Defendant Exchange Bank, and that all amounts misappropriated, stolen, misstated, diverted, by Defendant Scott Hobson shall be deemed excessive interest paid by plaintiff/borrower . . . ." (Appellants' App. at 210.) The complaint also alleged that Hobson "routinely, systematically and deliberately overstated the statements of financial condition of said borrower so that the loan could be 'booked' as a legitimate asset on the books and records of defendant Exchange Bank," and that Hobson "deliberately converted collateral of said Plaintiffs and deliberately diverted payments on loans to his own account thereby again misstating

---

[2]Although there is a factual discrepancy in the record about whether Eldon Dubas, Jerry Rowse, Ray Doggett, and Dale and Delores Brabander were customers of the Bank (see Appellants' App. at 213; Appellants' Br. at 7), the factual dispute does not change the outcome of this appeal, and we recite the facts as stated in the complaint.

the books and records of the bank, thereby triggering a default and thereby triggering phoney acceleration clauses and attorney's fees clauses, all of which constitute interest which is excessive." (Appellants' App. at 211.)

The complaint relied solely on federal question jurisdiction under 28 U.S.C. § 1331, citing 12 U.S.C. §§ 85, 86; 12 U.S.C. §§ 1972, 1975; and 12 U.S.C. § 1831d. The plaintiffs sought a declaratory judgment that the Bank Defendants charged and received usurious interest, entitling the plaintiffs to damages in the amount of $50 million, allegedly representing twice the amount of usurious interest paid by the plaintiffs. The Bank Defendants filed a Motion to Dismiss on March 19, 2007. The district court subsequently granted the motion to dismiss as to all plaintiffs except defendant Scott Hobson, who did not join in the motion, and the court certified the order as immediately appealable under Rule 54(b) of the Federal Rules of Civil Procedure.

II.

We review the district court's dismissal of the National Bank Act claim for want of federal jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure *de novo*, accepting all factual allegations in the complaint as true and viewing them in the light most favorable to the nonmoving party. See Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008). Federal courts are courts of limited jurisdiction, and a district court's federal question jurisdiction extends only to "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Appellants claim that the Bank Defendants' actions amounted to the illegal charging of usurious interest in violation of §§ 85 and 86 of the National Bank Act.[3]

---

[3]The Appellants' reliance on Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007), cert. granted, 128 S. Ct. 1651 (2008), is misplaced as to the National Bank Act claims. Discover Bank held that 28 U.S.C. § 1831d completely preempted state law

Section 85 "sets forth the substantive limits on the rates of interest that national banks may charge," Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 9 (2003), while section 86 "sets forth the elements of a usury claim against a national bank . . . and prescribes the remedies available to borrowers who are charged higher rates," id. Exchange Bank is a state-chartered bank, not a national bank. Sections 85 and 86 of the National Bank Act apply only to "associations," see § 85 ("Any association may take . . ."); § 86 (allowing recovery "from the association"), referring to national banking associations, see 12 U.S.C. § 37 (defining "associations" as used in the National Banking Act as "all associations organized to carry on the business of banking under any Act of Congress"). Thus, the National Bank Act does not apply to state-chartered banks. See First and Beck, a Nevada LLC v. Bank of Southwest, 267 Fed. Appx. 499, 501 (9th Cir. 2007) (unpublished) (dismissing National Bank Act claim against state-chartered bank for lack of jurisdiction because "12 U.S.C. § 85 provides for a cause of action only against nationally-chartered banks"); Krispin v. May Dep't Stores Co., 218 F.3d 919, 923 (8th Cir. 2000) (noting that the National Bank Act applies to national banking associations as defined by 12 U.S.C. §§ 21, 37); Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 826 (1st Cir. 1992) (explaining the history behind the DIDA and noting Congress's intent to level the playing field between national banks, whose interest rates were tied to federal discount rates under § 85, and state banks, whose interest rates prior to enactment of § 1831d were limited by state usury laws), cert. denied, 506 U.S. 1052 (1993). Because §§ 85 and 86 do not apply to state-chartered banks, the district court properly dismissed those claims brought under the National Bank Act for want of jurisdiction.

The appellants also claimed that the Bank Defendants' actions violated 12 U.S.C. § 1831d, which, by its explicit terms, does apply to federally-insured state-

usury claims against federally insured, state-chartered banks. Id. at 606. Section 1831d is not part of the National Bank Act, however, see 12 U.S.C. § 38, and Discover Bank does not address the separate issue of whether §§ 85 and 86 (as opposed to § 1831d) apply to state-chartered banks.

chartered banks.  See Discover Bank, 489 F.3d at 604 (noting that § 1831d "is to state-chartered banks" as the National Bank Act "is to national banks").  Section 1831d allows state-chartered banks to charge up to a specified interest rate and explicitly preempts state laws that set lower ceilings.  See § 1831d(a).  It also provides a civil cause of action for a person who is charged a rate higher than that allowed in subsection (a), specifying the remedy of forfeiture of the entire interest charged as well as damages in the amount of twice the interest unlawfully paid. § 1831d(b).

The forfeiture and damages remedies of § 1831d(b) apply to "the taking, receiving, reserving, or charging [of] a greater rate of interest than is allowed by subsection (a)."  A rather obvious prerequisite to a claim of usurious interest under § 1831d is that the overcharge relate to a charge of interest.  Regulations interpreting § 85 of the National Bank Act define "interest" to "include[] any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended."  12 C.F.R. § 7.4001(a).[4]

Appellants pick out the term "compensating" from the definition of "interest" and assert that they state a claim for usurious interest because "the bank was compensated by Defendant Hobson's . . . misallocation and theft."  (Appellants' Br. at 19.)  We sincerely doubt that benefitting (assuming that the Bank would in some way benefit from Hobson's alleged action of misallocating nearly $1 million from the Bank) from another's fraudulent activity amounts to compensation.  In any event, it is not just any "compensation," however broadly construed, that meets the definition of interest.  The compensation must relate to the extension of credit.  The regulation lists examples, including late fees, insufficient funds fees, overlimit fees, annual fees, cash advance fees, and membership fees as included within the definition of "interest."

---

[4]Courts construe the parallel provisions of § 85 and § 1831d similarly, as § 1831d was modeled after § 85.  See Discover Bank, 489 F.3d at 606.

§ 7.4001(a). Although read broadly, the term "interest" is not without limitation. The regulation explicitly excludes from the definition of "interest" such fees as appraisal fees, credit insurance premiums, finders fees, document or notary fees, or fees charged for obtaining a credit report. Id. These fees are surely compensation to the bank, certainly more closely tied to the extension of credit than the Appellants' claim that benefitting from fraudulent activity is compensation related to the extension of credit. Yet, such fees, not directly tied to the extension of credit, are excluded from the definition of interest to which the federal usury laws apply. See Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 745 (1996) (concluding that the regulation's distinction between charges assigned to specific expenses and charges "assessed for simply making the loan" was a rational distinction entitled to deference even though "in the broadest sense *all* payments connected in any way with the loan . . . can be regarded as compensating the creditor for the extension of credit" (internal marks omitted)). It goes without saying that if appraisal fees and credit reporting fees are excluded from the term interest, so too is a claimed benefit from the misallocation and theft of collateral and loan payments. See Doe v. Norwest Bank Minn., N.A., 107 F.3d 1297, 1302 (8th Cir. 1997) ("We have little difficulty concluding that the Comptroller's interpretation of 'interest' as excluding insurance premiums is reasonable."). The first amended complaint, alleging broadly that the Bank Defendants received compensation from Hobson's fraudulent acts, simply fails to state a claim under § 1831d. The district court properly dismissed this claim under Rule 12(b)(6).

The district court also dismissed the tying claims based on §§ 1972 and 1975. Although the first amended complaint cited to those Code provisions in the jurisdictional section of the complaint, it provided absolutely no facts to support an illegal tying claim. To state an antitying claim, "[t]he plaintiff . . . must show that the bank imposed a tie, that the practice was unusual in the banking industry, that it resulted in an anticompetitive arrangement, and that it benefitted the bank." Doe, 107 F.3d at 1304 (affirming Rule 12(b)(6) dismissal). Nowhere does the complaint allege that the Bank illegally tied any of the plaintiffs' loans to other products or services,

that any of its practices were unusual in the banking business, or that any tying activity benefitted the Bank.  The district court properly dismissed the antitying claim for failure to state a claim.  See Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## III.

The district court's judgment is affirmed.

_____