# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1181

_____

| | | |
|---|---|---|
| Physical Distribution Services, Inc., doing business as Labor Services Co., | * * * | |
| Plaintiff - Appellant, | * * | Appeal from the United States District Court for the District |
| v. | * * | of Minnesota. |
| R.R. Donnelley & Sons Co., | * * | |
| Defendant - Appellee. | * | |

_____

Submitted: October 16, 2008
Filed: April 7, 2009

_____

Before LOKEN, Chief Judge, BYE, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Physical Distribution Services, Inc., d/b/a Labor Services Co., appeals the district court's[1] order granting summary judgment and dismissing its claims against R.R. Donnelley & Sons Co. We affirm.

_____

[1]The Honorable Patrick Schiltz, United States District Judge for the District of Minnesota.

# I

Physical Distribution places long-haul and over-the-road truck drivers with parcel and freight delivery companies. Donnelley is a large printing company with numerous subsidiaries. In 2000, Donnelley purchased CTC Distribution Services and CTC's subsidiary company, Parcel Shippers Express. CTC and Parcel Shippers became subsidiary corporations of Donnelley.

In 2003, Parcel Shippers solicited Physical Distribution to provide drivers. According to Dale Robison, the owner of Physical Distribution, he believed Parcel Shippers was a division of Donnelley, and any contract with Parcel Shippers to provide drivers would be secured by Donnelley. After researching Donnelley's finances, Robison/Physical Distribution went ahead with negotiations on a contract with Parcel Shippers. To assist the negotiations, Parcel Shippers's general manager provided Physical Distribution with a copy of a contract between Donnelley and another company for use as a template. Robison made some modifications to the contract, listed the contracting parties as Physical Distribution Services, Inc. and Parcel Shippers Express, a division of R.R. Donnelley & Sons Co., and submitted it to Parcel Shippers for approval and execution. Among other terms, the contract provided:

> This AGREEMENT shall be binding on the parties hereto, their successors, legal representatives and assigns, and no assignment of this AGREEMENT or any interests herein by either party shall be valid without the prior written consent of the other party.

No written contract was ever executed, but in August 2003, Physical Distribution began supplying drivers to Parcel Shippers. Physical Distribution sent invoices for its services to Parcel Shippers and payments were made by Donnelley on behalf of Parcel Shippers.

In October 2004, Donnelley sold CTC and Parcel Shippers to American Package Express. Parcel Shippers's general manager informed Physical Distribution that Parcel Shippers was being sold by Donnelley to American Package. In November 2004, American Package began paying the invoices Physical Distribution submitted for services provided to Parcel Shippers. In February 2005, Physical Distribution began addressing its invoices to American Package instead of Parcel Shippers, and for the next eleven months received payment directly from American Package. At no time during this seventeen month period did Physical Distribution claim Donnelley violated the anti-assignment language of the contract.

In January 2006, American Package stopped making payments to Physical Distribution. From January through March 2006, Physical Distribution sent invoices totaling $695,534.41 which went unpaid. On March 16, 2006, American Package filed for bankruptcy protection. Physical Distribution inquired into the official date when Parcel Shippers changed over from Donnelley to American Package, and filed a proof of claim in the bankruptcy proceeding based on the unpaid invoices.

In October 2006, Physical Distribution filed suit against Donnelley alleging, among other claims, breach of contract and promissory estoppel. According to Physical Distribution, it contracted with Donnelley to provide drivers to Parcel Shippers, and the sale of Parcel Shippers to American Package resulted in an assignment of the contract in violation of the anti-assignment provision. Physical Distribution further argued, even assuming the contract was not between Donnelley and Physical Distribution but rather Parcel Shippers and Physical Distribution, Donnelley led it to believe it would guarantee Parcel Shippers's debts and should be estopped from avoiding payment of the outstanding invoices.

Donnelley moved for summary judgment, arguing the contract was between Physical Distribution and Parcel Shippers, a subsidiary corporation of CTC, which was in turn a subsidiary of Donnelley. Thus, Physical Distribution contracted with an

entirely separate legal entity, and Donnelley's sale of Parcel Shippers did not result in an assignment of the contract. Further, even assuming Donnelley undertook responsibility for the payment of Parcel Shippers's debts, Physical Distribution waived any objection to the sale of Parcel Shippers by continuing to do business with Parcel Shippers after it became aware of the sale.

The district court concluded the sale of Parcel Shippers did not breach the anti-assignment language of the contract. It further concluded Donnelley was not responsible for services provided by Physical Distribution after the sale because they were provided to Parcel Shippers, and Donnelley received no benefit from those services. On appeal, Physical Distribution argues the district court erred in concluding Donnelley did not improperly assign the contract when it sold Parcel Shippers. It further contends Donnelley led it to believe it was ultimately responsible for Parcel Shippers's debts, notwithstanding the sale of Parcel Shippers to American Package.

II

"We review a grant of summary judgment de novo, applying the same standard as the district court. Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party." Sappington v. Skyjack, Inc., 512 F.3d 440, 445 (8th Cir. 2008) (internal quotations and citations omitted). We may affirm the district court on any basis supported by the record. Phipps v. F.D.I.C., 417 F.3d 1006, 1010 (8th Cir. 2005).

Physical Distribution contends Donnelley's sale of Parcel Shippers violated the anti-assignment clause of the contract by transferring its obligations to American Package without first obtaining Physical Distribution's written approval. Physical Distribution further argues Donnelley's breach – some seventeen months earlier –

-4-

allows it to hold Donnelley responsible for payments American Package failed to make.  Donnelley, while vigorously disputing the existence of a contract, argues Physical Distribution waived its right to assert the anti-assignment language by failing to object within a reasonable time after having notice of the sale.

We assume, without deciding, that a contract existed between Physical Distribution and Donnelley.  "Contract rights are generally assignable, except where the assignment is (1) prohibited by statute; (2) prohibited by contract; (3) or where the contract involves a matter of personal trust or confidence."  Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 270 (Minn. 2004).  The rights provided under an anti-assignment clause may, however, be waived by a voluntary and intentional relinquishment of the right to prohibit an assignment.  Auto Owners Ins. Co. v. Star Windshield Repair, Inc., 743 N.W.2d 329, 337 (Minn. App. 2008) (citing In re Estate of Sangren, 504 N.W.2d 786, 790 (Minn. App. 1993)).

> The definition of a waiver most commonly accepted is that it is a voluntary relinquishment of a known right.  Both intent and knowledge, actual or constructive, are essential elements.
>
> . . .
>
> The question of waiver is largely one of intention.  It need not be proved by express declaration or agreement, but may be inferred from acts and conduct not expressly waiving the right.
>
> Waiver is ordinarily a question of fact for the jury.

Engstrom v. Farmers & Bankers Life Insurance Co., 41 N.W.2d 422, 424 (Minn. 1950) (internal citations omitted).

> The intent is . . . rarely to be inferred as a matter of law.  Conduct indicating a waiver may be so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary.  Then the intent to waive appears as a matter of law.

-5-

Farnum v. Peterson-Biddick Co., 234 N.W. 646, 647 (Minn. 1931); see also Star Windshield Repair, 743 N.W.2d at 337 (holding waiver is ordinarily a question of fact but summary judgment is appropriate where no genuine issue of material fact exists).

Here the intent to waive the anti-assignment language is clear, and Physical Distribution's actions are so inconsistent with the purpose of the clause they leave no room for a contrary inference. Physical Distribution was made aware of the sale in October 2004. Soon thereafter, it began billing American Package instead of Donnelley. Physical Distribution never objected to the sale or purported assignment and continued doing business with American Package for seventeen months after becoming aware of the sale. During this time, Physical Distribution was fully aware it was providing services to Parcel Shippers and American Package, with no benefit to Donnelley. Further, it was being paid by American Package, not Donnelley. To the extent a breach of the anti-assignment language might be constructed from these facts, Physical Distribution's actions following the sale demonstrate conclusively it acceded to the assignment, thereby waiving any objection. See, e.g., In re Estate of Sangren, 504 N.W.2d at 790 (holding the failure to assert an objection until four months following the assignment constituted a waiver of the right).

III

The judgment of the district court is affirmed.
_____

-6-