Reversed by Supreme Court, March 9, 2009

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DISCOVER BANK; DISCOVER FINANCIAL
SERVICES, INCORPORATED,
                    *Plaintiffs-Appellees,*

                    v.

BETTY E. VADEN,
                    *Defendant-Appellant,*

                    v.                          No. 06-1221

FEDERAL DEPOSIT INSURANCE
CORPORATION,
                    *Amicus Curiae.*

JOHN R. KUCAN, JR.; TERRY COATES,
                    *Amici Curiae.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:03-cv-3224-WDQ)

Argued: November 29, 2006

Decided: June 13, 2007

Before WILKINSON and DUNCAN, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the majority
opinion, in which Judge Wilkinson concurred. Judge Goodwin wrote
a dissenting opinion.

**COUNSEL**

**ARGUED:** John Andrew Mattingly, Jr., BALDWIN, BRISCOE & MATTINGLY, CHTD., Lexington Park, Maryland, for Appellant. Martin C. Bryce, Jr., BALLARD, SPAHR, ANDREWS & INGER- SOLL, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Joseph W. Hovermill, Matthew T. Wagman, John C. Celeste, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland; Alan S. Kaplinsky, BALLARD, SPAHR, ANDREWS & INGERSOLL, Philadelphia, Pennsylvania, for Appellees. Sara A. Kelsey, General Counsel, Rich- ard J. Osterman, Jr., Assistant General Counsel, Colleen J. Boles, Senior Counsel, Kathleen V. Gunning, Counsel, FEDERAL DEPOSIT INSURANCE CORPORATION, Arlington, Virginia, for Amicus Curiae Federal Deposit Insurance Corporation. F. Paul Bland, Jr., TRIAL LAWYERS FOR PUBLIC JUSTICE, Washington, D.C.; J. Jerome Hartzell, HARTZELL & WHITEMAN, L.L.P., Raleigh, North Carolina; Carlene McNulty, NORTH CAROLINA JUSTICE CENTER, Raleigh, North Carolina, for Amici Curiae John R. Kucan, Jr., and Terry Coates.

---

**OPINION**

DUNCAN, Circuit Judge:

For the second time, we hear an appeal in a dispute between Appel- lees Discover Bank and Discover Financial Services, Inc., a servicing affiliate of Discover Bank ("DFS," and, together with Discover Bank, "Discover"), and Appellant Betty E. Vaden ("Vaden"). This case arises from Vaden's failure to pay a credit card balance and DFS's resulting suit against her in state court. Vaden responded with several class-action counterclaims against DFS. Discover Bank then filed suit in federal district court under § 4 of the Federal Arbitration Act ("FAA"), seeking to compel arbitration of Vaden's counterclaims.

In the first appeal, we decided as a threshold matter that the federal courts possess subject matter jurisdiction under § 4 of the FAA if the underlying dispute presents a federal question. On remand, we directed the district court to decide whether such a federal question

exists here. More specifically, we asked the district court to determine whether Discover Bank or DFS was the real party in interest with respect to Vaden's state court counterclaims. If Discover Bank were found to be the real party in interest, then the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1811 et seq., would be implicated because Discover Bank is a state-chartered, federally insured bank. In that event, we asked the district court to determine whether the FDIA completely preempted Vaden's state law usury claims. If the district court found that the claims were completely preempted and therefore a federal question existed, it then had to determine whether there was a genuine issue of material fact regarding the existence of an arbitration agreement between Vaden and Discover Bank.

The district court found that this case presented a federal question and accordingly denied Vaden's motion to dismiss for lack of subject-matter jurisdiction and stayed her state-court counterclaims pending arbitration. We agree that a federal question exists here and that the district court properly compelled arbitration. Therefore, we affirm.

I.

In 1990, Vaden obtained a Discover credit card. The card was issued by Discover Bank, a Delaware-chartered, federally insured bank. DFS is a servicing affiliate of Discover Bank. According to the servicing agreement between DFS and Discover Bank, DFS performs such functions as marketing and servicing Discover Bank loan products and collecting on accounts pursuant to instructions from Discover Bank. J.A. 531-38. In June 1999, Discover mailed Vaden a new Platinum Discover Card. Discover claims that Vaden's account was automatically converted to Platinum status at this time. Vaden's "Cardmember" statements, however, identified her as a regular Cardmember until September 1999. In July 1999, Discover mailed Vaden a "Notice of Amendment to Discover Platinum Cardmember Agreement" (the "Notice of Amendment"). J.A. 33. This notice, which applied only to Platinum Cardmembers, included a provision requiring arbitration of disputes.

In July 2003, on behalf of Discover Bank, DFS sued Vaden in Maryland state court for nonpayment of a card balance in excess of $10,000. Vaden then filed class-action counterclaims based solely on

Maryland law against DFS. These counterclaims include a breach-of-contract claim and claims that certain fees and interest rates were charged in violation of applicable Maryland statutes that regulate finance charges, late fees, and compounding of interest on consumer credit accounts. In that proceeding, DFS was identified as "Discover Financial Services, Inc. (Discover), SVC Affiliate of Discover Bank, F/K/A Greenwood Trust Co., a DE chartered state bank and issuer of the Discover Card."

Shortly after Vaden filed these counterclaims, Discover filed a petition in federal court seeking to compel arbitration of Vaden's state-court counterclaims based on the arbitration provision in the Notice of Amendment. Discover had made no previous requests to Vaden for arbitration. The district court granted Discover's motion to compel arbitration.

Vaden timely appealed and this court heard argument on that appeal in December 2004. In January 2005, we considered the issue of whether subject-matter jurisdiction existed. *See Discover Bank v. Vaden*, 396 F.3d 366, 367 (4th Cir. 2005) ("*Vaden I*"). We held in *Vaden I* that "when a party comes to federal court seeking to compel arbitration, the presence of a federal question in the underlying dispute is sufficient to support subject-matter jurisdiction." *Id.* at 367. We declined to decide whether such an underlying federal question existed in this case. *Id.* On remand, we directed the district court to determine whether a federal question existed and guided it to examine whether Discover Bank was the real party in interest with respect to Vaden's state-court claims and whether these claims were completely preempted by the FDIA.[1]

Answering these questions, the district court found that Discover Bank was the real party in interest and that Vaden's state court usury claims were completely preempted. Also, the district court found that there was no issue of material fact regarding the existence of an arbitration agreement between Vaden and Discover Bank, and accordingly granted Discover's request for arbitration.

---

[1]Much of the dissent's discussion explicates its dissatisfaction with *Vaden I*. The holding in *Vaden I* is, of course, the law of the case, and beyond the reach of this appeal.

Vaden again timely appealed the district court's ruling, which appeal is before us now. Vaden argues that DFS is the real party of interest, and thus the FDIA is not implicated and the federal court is without subject-matter jurisdiction over the dispute. Vaden also contends that compelling arbitration was improper for two reasons: (1) Discover lacks standing because it failed to satisfy the relevant statutory requirements for compelling arbitration, and (2) there was not a valid arbitration agreement between Vaden and Discover Bank.

## II.

We turn first to the question of whether the federal courts have subject-matter jurisdiction over Discover Bank's § 4 petition for arbitration under the FAA.

Under § 4 of the FAA, a district court may issue an order compelling arbitration if the court would otherwise "have jurisdiction under Title 28, in a civil action . . . *of the subject matter of a suit arising out of the controversy* between the parties." 9 U.S.C. § 4 (2000) (emphasis added). Section 4 does not require a party to actually file suit regarding the underlying controversy; the FAA requires only that a party be aggrieved by another party's failure to arbitrate a controversy, "the subject matter of which would fall within the jurisdiction of this Court, were an actual suit to arise out of the controversy." *Reynolds & Reynolds Co. v. Image Software, Inc.*, 254 F. Supp. 2d 761, 765 (S.D. Ohio 2003); *see Vaden I*, 396 F.3d at 369 ("We thus hold that a federal court possesses subject-matter jurisdiction over a case when the controversy underlying the arbitration agreement presents a federal question."); *id.* at 370 ("The text of § 4 requires us to consider jurisdiction as it arises out of the whole controversy between the parties."); *Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212, 1223 n.11 (11th Cir. 1999) (suggesting that "it is appropriate to look through the arbitration request to assess whether the underlying dispute between the parties is grounded in federal law). Thus, a § 4 petition to compel arbitration is properly in federal court if the underlying dispute presents a federal question.[2] *Moses H. Cone Mem'l*

---

[2]Were diversity jurisdiction to exist, this alone would be sufficient to confer federal jurisdiction. Here, however, diversity jurisdiction is not present. *See* 28 U.S.C. § 1332.

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *Vaden I*, 396 F.3d at 367. A court must therefore look through the arbitration claim and examine the underlying state-court action.

The Supreme Court has explained that even when a complaint alleges only violations of state law, the case may nevertheless center on a federal question, and therefore be removable,[3] if federal law completely preempts the state law claims. *Caterpillar Inc. v.*

---

[3]The dissent argues that complete preemption is purely a removal doctrine and therefore that we improperly invoke it upon the unique procedural posture of this case. Although complete preemption did originate in the removal context, we conclude that it also applies to the unique procedural posture of this case. Complete preemption creates an exception to the well-pleaded complaint rule: "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). The doctrine, therefore, does not flow from the procedural act of removal, but from the dominance of federal law over the preempted state law. Thus, it is not a logical leap to apply this principle to the instant case. To hold otherwise would have the perverse result of returning to state court otherwise completely preempted federal claims because of the unanticipated nature of a defendant's counterclaims.

Moreover, the question of whether complete preemption is a "removal doctrine," *see* Dissenting Op. at 20, is irrelevant. The point is simply whether Discover Bank's arbitration petition presents a federal question. *See* 9 U.S.C. § 4 (2000) (district court may order arbitration if the court would otherwise "have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties."). We held as much in *Vaden I*, stating "the plain text of § 4 requires us to ask whether any basis for subject matter jurisdiction would exist for the case in the absence of the arbitration agreement," *Discover Bank v. Vaden (Vaden I)*, 396 F.3d 366, 373 (4th Cir. 2005), and holding "the presence of a federal question in the underlying dispute is sufficient to support subject-matter jurisdiction," *id.* at 367. The *Vaden I* panel was unanimous on this point, and other courts have also refused to unduly restrict federal jurisdiction over Section 4 petitions. *See, e.g., Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212, 1223 n.11 (11th Cir. 1999).

*Williams*, 482 U.S. 386, 393 (1987). This is the "complete pre-emption doctrine." *Id. Caterpillar* explains that "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Complete preemption is an exception to the well-pleaded complaint rule. Although generally a case may not "be removed to federal court solely because of a defense or counterclaim arising under federal law," *Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1247 (10th Cir. 2005), *complete* preemption is an exception to this rule and so federal jurisdiction is proper, even though the preemption is only raised as a defense. *See Caterpillar*, 482 U.S. at 393; *see also Topeka Hous. Auth.*, 404 F.3d at 1247 (noting that complete preemption is an exception to the general rule barring removal based on counterclaims) (citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722.1, at 508 (3d ed. 1998)).[4]

---

[4]The Supreme Court's holding in *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002), relied upon by Vaden and cited by the dissent, is not to the contrary. The Court reaffirmed "the principle that federal jurisdiction generally exists 'only when a federal question is presented on the face of the [plaintiff's] properly pleaded complaint.'" *Id.* at 831 (quoting *Caterpillar*, 482 U.S. at 392). *Holmes Group* did not, however, involve complete preemption. Moreover, the Court grounded its holding in policies underlying the well-pleaded complaint rule, noting that, under the federal patent statute at issue in that case, federal jurisdiction could not obtain based solely upon defendant's answer. *Id.* at 831. In complete preemption cases, however, "claims are so 'necessarily federal' that they will always permit removal to federal court, even if they are raised only by way of defense." Wright, Miller, & Cooper, *supra*, § 3722.1 at 508. As such, "the complete-preemption doctrine overrides such fundamental cornerstones of federal subject-matter jurisdiction as the well-pleaded complaint rule and the principle that the plaintiff is master of the complaint." *Id.*

The *Holmes* court was also concerned about allowing a defendant to evade a plaintiff's choice of state forum and the well-pleaded complaint rule by asserting federal counterclaims: this is the *opposite* of the facts here. In this case, the only claims advanced by Vaden's counterclaims purport to be state law claims. There is no danger that defendant Vaden

In misapprehending that complete preemption is a narrow exception to the general rule that federal jurisdiction must appear on the face of the complaint, the dissent fails to appreciate the fundamental distinction between *complete* and *ordinary* preemption. Its interpretation would deny Discover Bank a federal forum even if Discover were a nationally—as opposed to state—chartered bank operating under a federal law the Supreme Court has expressly held to completely preempt state law. *See infra* Part II.B. The fallacy inherent in the dissent's view is patent: it would render the concept of complete preemption a nullity.

For subject-matter jurisdiction to exist in this case, then, two requirements must be satisfied: (1) a federal law other than the FAA must be invoked; and (2) said federal law must completely preempt the state law claims in question. The district court, at our direction, found that there was a federal question in the underlying dispute because Discover Bank was the real party in interest in the state-court proceedings, thereby implicating the FDIA, and that the FDIA completely preempted Vaden's state-court usury claims against Discover Bank. We now consider its determinations, discussing each in turn. We review questions of subject-matter jurisdiction de novo, *Lontz v. Tharp*, 413 F.3d 435, 438 (4th Cir. 2005).

A.

First, we look to whether a federal law is invoked by the underlying state court dispute. *See Caterpillar*, 482 U.S. at 393. To resolve this question we must answer another: whether Discover Bank, as

---

might frustrate plaintiff Discover Bank's choice of state forum. To the contrary, it is Discover who filed the arbitration complaint in federal court and Vaden who is resisting federal jurisdiction.

Moreover, the whole point of the complete preemption doctrine is that plaintiff's choice of forum is not given preference, but must instead yield to Congress' intent that some claims, even those cloaked in state-law trappigs, are really federal causes of action. In this, complete preemption is an exception to the well-pleaded complaint rule: when complete preemption obtains, a plaintiff may not avoid a federal forum by asserting only state claims.

opposed to DFS, is the real party in interest with respect to Vaden's counterclaims.[5] On the face of the pleadings, DFS, not Discover Bank, is the party to the state-court dispute. If Discover Bank is *not* the real party in interest with respect to the counterclaims, the FDIA does not apply because DFS is not a bank,[6] and therefore the counterclaims implicate no federal law. The parties' styling of the pleadings does not control our analysis, however; we must decide whether Vaden's state-court counterclaims are really directed at Discover Bank rather than DFS. *See Vaden I*, 396 F.3d at 372 n.3. The district court found that Discover Bank was the real party of interest with respect to Vaden's counterclaims, and we agree.

One of our most fundamental procedural rules is that an action must be brought by the party that has the right to enforce the claim and has a significant interest in the litigation. *See Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973) (citing Fed. R. Civ. P. 17(a)). The identity of the "real" party may not

---

[5]The dissent calls this inquiry an "unnecessary detour," citing Federal Rule of Civil Procedure 17(a). *See* Dissenting Op. at 23 n. 4. It is mistaken. To begin with, Discover Bank is not a defendant in the federal action, but a *petitioner* filing a "verified complaint in the nature of a petition to compel arbitration and enjoin defendant's prosecution of her state court counterclaim." In any case, as the FDIC's amicus brief demonstrates, courts must routinely determine whether a bank, rather than one of its business partners, may resort to the preemptive scope of the NBA or the FDIA. To avoid this analysis would allow a plaintiff to artfully plead state law claims against a non-bank defendant and thus frustrate Congress' intent that certain causes of action are always federal. *See, e.g.*, *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) (finding complete preemption under National Bank Act although bank extending credit was not a party to the state court action). The real-party-in-interest analysis is also necessary to prevent a defendant from falsely asserting that it is a bank and thus preempting large swaths of state law which Congress did not intend to displace. *See, e.g.*, *In re Community Bank of Northern Va.*, 418 F.3d 277, 297 (3d Cir. 2005) (finding complete preemption inapplicable because the loans at issue were made by a non-depository institution).

[6]It is uncontested that DFS is not a bank, state-chartered or otherwise, and therefore neither the National Banking Act nor the FDIA applies to it.

always be apparent from the face of pleadings; it may be necessary to look beyond the pleadings to the facts of the dispute. *See Vaden I*, 396 F.3d at 373 n.3; *see also Phipps v. FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005) ("[W]e are required to look beyond the plaintiffs' artful attempts to characterize their claims to avoid federal jurisdiction."). Such is the case here.

The need to look carefully at the facts to determine the real party in interest is particularly compelling in this instance because of the unique and complex relationships among the parties through the various phases of this litigation.[7] The instant suit began when DFS, identified as "Discover Financial Services, Inc. (Discover), SVC Affiliate of Discover Bank, F/K/A Greenwood Trust Co., a DE chartered state bank and issuer of the Discover Card," sued Vaden in Maryland state court for an unpaid credit card balance. Vaden counterclaimed against DFS, alleging damages based upon improper assessment of fees and interest charges: "[T]hus, her claims were directed against the entity that extended her credit, charged her interest and had a right to bring the collection action—the lender." Amicus Br., FDIC, at 2. Vaden would have us simply accept DFS as the lender, and thus real party in interest, and deny Discover Bank's role as originator of her Cardmember account. The facts, however, show that Discover Bank was the lender here and therefore the real party in interest.

There are several pieces of evidence we find instructive in construing the relationship between Vaden and Discover Bank. The Cardmember agreements issued to Vaden are of particular significance. These agreements conclusively demonstrate that Discover Bank was the entity that extended Vaden credit and set the interest and fees of which Vaden complains.[8] *See e.g.*, J.A. 26-27, 29-31, 206-07. The agreements allow Discover Bank to levy periodic finance charges and

---

[7]At our request, the Federal Deposit Insurance Corporation submitted an amicus brief assessing the issue of whether Discover Bank was the real party in interest on these facts. We find its analysis of the record helpful in parsing the various agreements and documents that delineate the relationship among Discover Bank, DFS, and a cardmember such as Vaden.

[8]Some of these documents reference Greenwood Trust Company, which was Discover Bank's predecessor.

late fees, as well as to change the rate of finance charge with thirty days' notice. *Id.* In addition, the arbitration agreement in question was between Discover Bank and Vaden only, as they were the only two parties to the original Cardmember agreement. *See* J.A. 33-34, 499. The servicing agreement between Discover Bank and DFS also supports our finding that Discover Bank is the real party in interest here. That agreement provides that DFS will service certain Discover Bank "loan products," J.A. 531-38, and DFS must perform all marketing and collection services under instructions from Discover Bank, J.A. 532-33. One of the service activities DFS performed was mailing monthly bills to cardmembers. Nothing on the statements that DFS mailed to Vaden identified DFS as the lender. To the contrary, mailing billing statements is consistent with DFS's admitted role as a servicing agent. DFS also brings collection actions pursuant to the servicing agreement, as it did here in suing Vaden for her unpaid balance on Discover Bank's behalf. *See* J.A. 533.

In addition, as the FDIC points out, the servicing agreement specifies that:

> DFS will not be responsible for violations of federal or state law, including usury laws, fee restrictions or privacy laws, to the extent that DFS acts consistently with directions or supervision received from [Discover Bank] or its agents. . . . *[Discover Bank] will be solely responsible for establishing the annual percentage yields and rates, insurance premiums, and other charges and fees for its credit cards*, deposit accounts and other products and for ensuring that such yields, rates, premiums, charges or fees are in compliance with state and federal laws.

J.A. 531-32 (emphasis added). The agreement establishes a clear division of authority between DFS and Discover Bank, designating Discover Bank as the party in charge of setting the terms and conditions of lending money through its credit cards. DFS, although it could evaluate consumer credit applications, could only do so under guidelines set forth by Discover Bank. *Id.*

Importantly, the servicing agreement also provides that Discover Bank will indemnify DFS for any damages caused by Discover Bank.

J.A. 536. This includes any potential judgment from Vaden's state court counterclaims against DFS. Discover Bank acknowledges that it would be bound by any judgment resulting from the state-court litigation, even though it was not officially a party to it, because DFS was acting on its behalf. Appellee's Br. at 24 n.7. Nor would DFS be permitted to keep any funds collected from a Cardmember in its own name: it must immediately deposit all such funds in Discover Bank's accounts. J.A. 534.

A final source of support for the conclusion that Discover Bank is the real party in interest is found in Discover Bank's financial statement and prospectuses for the sale of interests in credit card receivables through securitizations. Discover Bank's independently-audited financial statement explains that credit-card loans make up the majority of the bank's consumer loans and are assets of the bank. J.A. 511, 519. The bank's prospectuses identify Discover Bank as the issuer of the Discover credit card and owner of the Discover Card account. J.A. 543, 619-622. These same prospectuses reaffirm Discover Bank's right to set the terms for essential aspects of a cardholder's account: the rate for periodic finance charges, late fees, credit limits, minimum monthly payments, credit-worthiness criteria, charge-off policies, and collection practices. J.A. 613, 619, 621, 623. Service and operating tasks are delegated to DFS. J.A. 620, 622.

This evidence notwithstanding, Vaden argues that DFS, and not Discover Bank, is the real party in interest with respect to her state-law counterclaims. She points to several items in the record for support, including the pleadings themselves, Morgan Stanley's Annual report on Discover, and press releases from DFS. In particular, Vaden proffers certain press releases stating that DFS operates the Discover Card brand as evidence that DFS is the real party in interest. The functions attributed to DFS in these press releases, however, are consistent with its role as a servicing entity and do not establish it as a lender. Importantly, Vaden herself does not contest the fact that it is Discover Bank and not DFS that set the interest rate on her account. None of these documents suggest that DFS operated as a lender or had any authority to alter or set vital terms of Vaden's Cardmember account. Moreover, these documents are secondary sources of information, rather than primary sources such as the servicing agreement and Discover Bank's prospectus. We are unpersuaded by Vaden's

arguments, as we find the evidence she proffers to be consistent with the conclusion that Discover Bank is the real party in interest.

On these facts, we hold that Discover Bank is the real party in interest with respect to Vaden's state court counterclaims. Because Discover Bank is a state-chartered, federally insured bank, the FDIA is implicated by these claims against the bank.[9]

### B.

We turn next to the question of whether § 27 of the FDIA "completely preempts" state law usury claims against a state-chartered, federally insured bank that is the real party in interest of a state court dispute.[10]

In interpreting any statute, we turn first to the text of the statute itself. Section 27(a) of the FDIA provides in part:

> In order to prevent discrimination against State-chartered insured depository institutions . . . with respect to interest rates . . . such State bank[s] . . . may, *notwithstanding any State constitution or statute which is hereby preempted for*

---

[9]In finding Discover Bank to be the real party in interest here, we emphasize the heavily fact-dependent nature of our analysis and its consequent parameters. Clearly, a state-chartered, federally insured bank will not always be the real party in interest for purposes of invoking the FDIA. For example, in *Goleta National Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 718-19(E.D.N.C. 2002), a payday lender had "leased" an association with the Goleta National Bank in order to avoid state usury laws. The *Lingerfelt* court held that the non-bank payday lender, rather than Goleta National Bank, was the real lender and therefore the complete preemption doctrine did not apply. *Id.; see also Flowers v. EZPawn Okla., Inc.*, 308 F. Supp. 2d 1191, 1196 (N.D. Ok. 2003) (finding that EZPawn—not the affiliated bank—was the real lender and therefore no subject-matter jurisdiction existed). Such cases are distinguishable from the facts here.

[10]Because Vaden "conceded" that the FDIA completely preempted her state-law claims, the district court's analysis of this issue was cursory. We note, however, that a party may not create jurisdiction by concession and thus address this issue directly.

> *the purposes of this section*, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest . . . at the rate allowed by the laws of the State . . . where the bank is located.

12 U.S.C. § 1831d(a)(emphasis added). The statute's express preemption provision indicates that at the very least, Congress contemplated ordinary express preemption when drafting this statute.

However, to decide the more specific question of whether Congress intended *complete* preemption of state-court usury claims, as distinguished from ordinary express preemption, we look beyond the text, to Congress's intentions in enacting the statute. The legislative history of the FDIA is instructive in this regard. It tells us that Congress intended to "allow[ ] competitive equity among financial institutions, and reaffirm[ ] the principle that institutions offering similar products should be subject to similar rules." 126 Cong. Rec. 6,908 (1980) (Statement of Sen. Bumpers). The FDIA was enacted in part to "provide[ ] parity, or competitive equality, between national banks and State chartered depository institutions. . . ." 126 Cong. Rec. 6,900 (1980) (Statement of Sen. Proxmire).

Keeping in mind the purpose underlying the FDIA's enactment, we turn to the question of whether Congress intended the FDIA to completely preempt state-law usury claims against state-chartered banks. Although this is an issue of first impression in this court, we are not wholly without guidance as far as federal banking laws are concerned. The Supreme Court has addressed the issue within the context of the National Bank Act ("NBA"), 12 U.S.C. §§ 1 et seq., which is to national banks as section 27 of the FDIA is to state-chartered banks.[11]

---

[11]The Supreme Court's recent decision of *Watters v. Wachovia* ___ U.S. ___, 127 S. Ct. 1559 (2007), is instructive, though not precisely on point. In *Watters*, the court held that a national bank's "mortgage business, whether conducted by the bank itself or through the bank's operating subsidiary" is subject to federal, and not state, regulatory oversight. *Id.* at 11. Although neither the FDIA nor state court usury claims were at issue, the Court's holding did reaffirm the basic principle elucidated in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 11 (2003), that federal banking laws preempt state law. "[T]he States can exercise no control over national banks, nor in any wise affect their operation, except in so far as Congress may see proper to permit." *Watters*, 127 S.Ct. at 6.

In *Beneficial*, the Supreme Court held that the NBA completely pre-empts state-court usury claims against national banks. 539 U.S. at 11. The Court explained that "[b]ecause §§ 85 and 86 provide the exclusive cause of action" for usury claims, there is "no such thing as a state-law claim of usury against a national bank." *Id.* As a result, even though the plaintiff's complaint did not mention federal law, his cause of action arose under federal law and defendant National Bank's removal to federal court based on complete preemption under the NBA was proper. *Id.* at 10-11.

One of our sister circuits has compared the NBA to the FDIA and found that both statutes completely preempt state-law usury claims.[12] The Third Circuit has held that the NBA and FDIA are interpreted in para materia and therefore the doctrine of complete preemption applies to the FDIA as well. In *In re Community Bank of N. Va.*, 418 F.3d 277, 295 (3d Cir. 2005), the court found that Section 1831d(a) "completely preempts any state law attempting to limit the amount of interest and fees a federally insured, state-chartered bank can charge." Indeed, not only does the FDIA contain an express preemption clause —"notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section"—but it also "incorporates verbatim the language of § 85 of the NBA." *Id.* at 295. "When Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts ordinarily should be interpreted the same way." *Id.* at 295-96. Therefore, complete preemption was held to apply to state usury claims against state-chartered, federally insured banks, just as it does to claims against national banks.

The First Circuit has also compared the NBA and FDIA, although not in the context of complete preemption. The dispute in *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 821 (1st Cir. 1992), arose when the Commonwealth of Massachusetts notified Greenwood that its late-fee policy violated state law. Greenwood reacted to the threat of potential litigation from the state by filing for declaratory and

---

[12]In contrast, one federal court has held that the FDIA does not contemplate complete preemption. *See Saxton v. Capital One Bank*, 392 F. Supp. 2d 772, 780-84 (S.D. Miss. 2005) (distinguishing *Beneficial Nat'l Bank* as being grounded in the federal interest that protects national banks from state taxation). For the reasons above, we disagree.

injunctive relief in federal court on the grounds that the FDIA[13] expressly preempted state law usury claims. In assessing whether the FDIA *expressly*—not completely—preempted state usury laws, the court explained that Congress enacted the FDIA to level the playing field between national and state banks regarding the levying of interest rates. *Greenwood Trust*, 971 F.2d at 826. "The historical record clearly requires a court to read the parallel provisions of [the FDIA] and the Bank Act in pari materia." *Id.* (emphasis omitted).[14]

We find the logic of our sister circuits compelling. We note as well that the FDIC further supports our finding of complete preemption.[15] The agency has "uniformly construed Section 1831d in pari materia with Sections 85 and 86 [of the NBA]." Amicus Br., FDIC, at 10

---

[13]*Greenwood* refers to the FDIA as the "DIDA," but the statutory provision at issue is the same, 12 U.S.C. § 1831d(a). 971 F.2d at 827.

[14]There is one difference between the relevant provisions of the NBA and the FDIA that we must pause to consider. The NBA states that an action must be "commenced within two years from the time the usurious transaction occurred," 12 U.S.C. § 86, while the FDIA states that a person aggrieved "may recover in a civil action commenced *in a court of appropriate jurisdiction* not later than two years after the date of such payment." 12 U.S.C. § 1831d(b) (emphasis added). As both statutes speak to the creation of a federal cause of action, we do not read the phrase "a court of appropriate jurisdiction" as inconsistent with the complete preemption doctrine. Rather, we agree with the First Circuit that the differences in the statutes are an insufficient basis upon which to distinguish them: "[a]lthough there are niggling variations, the key phraseology is substantially identical." *Greenwood Trust*, 971 F.2d at 827. Indeed, it would be anomalous to interpret the inclusion of a general forum-selection provision such as the one in the FDIA as precluding complete preemption.

[15]The FDIC's interpretation of § 1831d is entitled to only limited deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994). In its brief, the agency points to no regulation or other formal statement of its policy that was adopted with notice-and-comment rulemaking or through formal adjudication. Therefore, "we defer to the agency's interpretation only to the extent that the interpretation has the power to persuade." *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 354 (4th Cir. 2004) (citing *Skidmore*, 323 U.S. at 134). We defer only to the extent that we are persuaded by the FDIC's interpretation. *See Skidmore*, 323 U.S. at 140.

(emphasis omitted). "[U]nder Section 1831d(a), state banks were provided interest rate authority comparable to that of national banks. Interest charges include not only the numerical percentage rate assigned to a loan but also late payment fees, over the limit fees and other similar charges." *Id.* (citing 12 C.F.R. § 7.4001(a)) (footnote omitted). In arguing that the FDIA completely preempts state-law usury claims, the FDIC relies on *Beneficial National Bank*, agreeing with the First and Third Circuits, that in § 1831d, "Congress created a federal cause of action that entirely replaced . . . the analogous area of state law." *Id.* at 13.

We find the analyses of the FDIC and our sister circuits persuasive. Given the express preemption language of the FDIA, the statute's legislative history affirming Congress' intent to provide competitive equality between national and state-chartered banks, the virtual identity of the preemption language in the NBA and that of the FDIA, and the Supreme Court's finding of complete preemption under the NBA, we are hard-pressed to conclude other than that Congress intended complete preemption of state-court usury claims under the FDIA. As the final step in our analysis, we turn to a consideration of whether Vaden's state law counterclaims fall into this completely preempted category.

Vaden's state court counterclaims challenge certain fees and interest rates charged on her Discover card account.[16] She argues that these fees and interest rates were in violation of Maryland laws regulating finance charges, late fees, and compounding of interest on consumer credit accounts. *See* Md. Code Ann., Comm. Law §§ 12-502, -506, -506.2 (2005).[17] Vaden's complaints regarding the fees and interest charged on her cardmember account fall squarely within the FDIC's

---

[16]We recognize that not all of Vaden's claims fall into the state-court usury claim category. The scope of the arbitration agreement, however, subsumes all of Vaden's various counterclaims, including her breach of contract claims asserting fraud and violations of good faith and fair dealing as well as her claims of "unfair and deceptive trade practices." While those non-usury claims arguably fall outside the preemptive scope of the FDIA, *see Saxton v. Capital One Bank*, 392 F. Supp. 2d 772, 783 (S.D. Miss. 2005) (collecting cases), complete preemption of any one of Vaden's counterclaims should suffice to provide a federal forum under the complete preemption doctrine.

[17]In contrast, Delaware's commercial laws, governing Discover Bank, allow banks to charge late fees, interest, and compound interest according to the cardholder agreement. *See* Del. Code Ann. tit. 5, §§ 941(8), 943, 945, 950, 952 (2005).

definition of "usury" charges. *See* 12 C.F.R. § 7.4001(a) (defining usury charges as the numerical periodic rate, late payment fees, over-limit fees, and other charges). We therefore conclude that Vaden's claims are completely preempted by the FDIA.[18] We emphasize again that our holding only extends so far as a state-chartered, federally insured bank is the real party of interest with respect to the preempted state-court claims.

### III.

Lastly, we turn to the issue of whether an arbitration agreement binds Vaden and Discover Bank so as to make compelling arbitration proper. Pursuant to our instructions in *Vaden I*, the district court also examined "whether there was a question of material fact about the existence of an arbitration agreement." 396 F.3d at 373 n. 4. Vaden appeals the district court's findings that an arbitration agreement existed between the parties and that her claims are subject to arbitration because she failed to opt out of that agreement. *Discover Bank v. Vaden*, 409 F. Supp. 2d 632, 639 (D. Md. 2006) (citing *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 634 (4th Cir. 2002), for the proposition that a "court must order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored"); *see* 9 U.S.C. § 4.

Significantly, under both Delaware and Maryland law, Vaden bears the burden of rebutting the presumption of receiving the arbitration agreement, which was included in a Notice of Amendment to the Cardmember agreement.[19] *See Graham v. Commercial Credit Co.*, 194 A.2d 863, 865 (Del. Ch. 1963) (holding "that mail which is prop-

---

[18]To find otherwise would undermine the statute's purpose, which is to provide state banks parity with national banks: if we found no complete preemption here, we would be treating state banks differently under the FDIA than national banks are treated under the NBA. Such a result clearly cuts against Congress's intentions in grafting language from the NBA to the FDIA.

[19]We agree with the district court's conclusion that Discover satisfied the requirements for the presumption of receipt, as it provided unrebutted affidavits detailing the procedures and practices for mailing the Notice of Amendment.

erly addressed and posted . . . is presumed to be duly received by the addressee"); *Marsheck v. Bd. of Trustees of the Fire & Police Employee's Ret. Sys. of the City of Balt.*, 749 A.2d 774, 785 (2000) (explaining the presumption of receipt arising from proper mailing). Vaden's only evidence to support her claim that she did not receive it is her own statement that she did not, and mere denial is insufficient to rebut the presumption of receipt. We find no error in the district court's analysis of this issue and so affirm based on the reasoning of the district court.[20]

---

[20]Vaden also attempts to escape arbitration by arguing that Discover fails to satisfy the relevant statutory standing requirements for compelling arbitration. We cannot agree.

Intriguingly, the alleged defect in standing Vaden points to is her own failure to "unequivocally refuse" a request for arbitration. *See* Appellant's Br. at 43. The FAA, under which Discover brings suit, states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for . . . arbitration." 9 U.S.C. § 4. Vaden contends that, because Discover did not request arbitration with her before filing suit, she never refused arbitration and therefore Discover is not "[a] party aggrieved by [her] failure . . . to arbitrate." *Id.* Accordingly, she argues, Discover has not met the requirement for filing a petition. *See* Appellant's Br. at 41-44. One sister circuit has held that an action to compel arbitration is proper when the party against whom the motion to compel is made has commenced litigation that is the subject matter of the parties' arbitration agreement. *See, e.g. PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) (finding that an action to compel arbitration is proper when the other party refuses to arbitrate by "unambiguously manifesting an intention not to arbitrate the subject matter of the dispute").

Although Vaden did not initiate the original suit, she counterclaimed in state court and has litigated extensively—to the tune of not one, but two appeals before this court—to avoid arbitration of her claims. To agree with Vaden's arguments that she has not refused a request for arbitration in the meaning of the statute would create an absurd result: reversing a motion to compel arbitration against a party who argues that she never refused to arbitrate in the first place. Neither common sense nor precedent countenances such a result, and so we find no defect of standing here.

IV.

For the foregoing reasons, we affirm the district court's finding that Discover Bank is the real party in interest with respect to Vaden's state-court counterclaims, and we hold that the FDIA completely preempts state-court usury claims against a state-chartered, federally insured bank to the extent that the bank is the real party in interest with respect to those claims. We also affirm the district court's finding that there was no issue of material fact with respect to the existence of an arbitration agreement between Vaden and Discover and therefore affirm the district court's grant of Discover's motion to compel arbitration.

*AFFIRMED*

GOODWIN, District Judge, dissenting:

The district court and the majority inexplicably use the removal doctrine of complete preemption to recharacterize a *counterclaim* in a state court civil action as federal. From that process, they pluck an "independent" basis for federal subject matter jurisdiction to support this action to compel arbitration. As I find no independent basis for federal court jurisdiction exists, I respectfully dissent.

In *Vaden I*, the court heard an appeal from a case brought under the FAA, which did not have an independent jurisdictional basis on its face.[1]

---

[1]It is well established that the FAA standing alone does not provide a basis for federal jurisdiction. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction."). Therefore, before a district court may entertain a petition under the FAA, there must be an independent basis of jurisdiction. *Owens Ill., Inc. v. Meade*, 186 F.3d 435, 439-40 (4th Cir. 1999) ("Section 4 of the FAA confers jurisdiction in the district court over petitions to compel arbitration only to the extent that the federal court would otherwise have jurisdiction over the case. On that basis, this case must include another independent basis to establish federal jurisdiction.").

The panel found that "[a] federal court may . . . hear a § 4 petition to compel arbitration if, but for the arbitration agreement, subject matter jurisdiction over the case would otherwise exist by virtue of a *properly invoked federal question* in the underlying dispute." *Discover Bank v. Vaden (Vaden I)*, 396 F.3d 366, 373 (4th Cir. 2005) (emphasis added). The court in *Vaden I* remanded the case to the district court with instructions to determine whether "such a federal question exists in this case." *See id.* at 373. The *Vaden I* panel hypothesized that Ms. Vaden's *counterclaims* alleging illegal interest rates and late fees might present issues of such substantial federal interest as to be, in effect, federal claims under the FDIA. *See Vaden I*, 396 F.3d at 373 n.3. The panel suggested to the district court that if it found that Discover Bank, "as opposed to merely Discover Financial Services, is a party of interest in the state law suit," then a federal question may be presented.[2] *Id.* at 373 n.3. Upon remand, the district court found that Discover Bank was the real party in interest with respect to the counterclaims and on that basis bootstrapped an additional party into the case to defend the counterclaims. *Discover Bank v. Vaden*, 409 F. Supp. 632, 637 (D. Md. 2006).

My disagreement with the majority opinion centers on its finding of "arising under" jurisdiction in a counterclaim. Federal question jurisdiction cannot be predicated on federal issues that may arise later in an action by way of defense or counterclaim. Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L. Rev. 1781, 1783 (1998) (citing *Takeda v. Northwestern Nat. Life Ins. Co.*, 765 F.2d 815, 821-22 (9th Cir. 1998)).

My conclusion that there is no properly invoked federal question in the underlying case relies on basic principles of "arising under" jurisdiction. Federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

---

[2]I do not know what it is to be "a party of interest" in a lawsuit, and the panel in *Vaden I* gave no explanation. The district court, parties, and apparently now the majority have treated this as an inquiry into who "the real party in interest" is in Ms. Vaden's counterclaims. The majority states, "[m]ore specifically, we asked the district court to determine whether Discover Bank or DFS was the real party in interest with respect to Vaden's state court counterclaims." *Op.* at 3.

("Federal courts . . . possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree."). Article III of the Constitution gives federal courts the power to hear cases "arising under" the Constitution, laws, and treaties of the United States. U.S. Const. art. III, § 2, cl. 1. This grant of power is not self-executing. Congress did not give the federal courts general federal question jurisdiction until the Judiciary Act of 1875. Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, 470 (current version at 28 U.S.C. § 1331 (1994)). Although the language of § 1331 tracks Article III's arising under language, the Supreme Court has given § 1331 a limiting construction. Miller, 76 Tex. L. Rev. at 1782. "One of the keystones of this limiting construction is the 'well-pleaded complaint rule' articulated by the Supreme Court in *Louisville & Nashville R.R. v. Mottley* and constantly reaffirmed by the federal judiciary." *Id.* For the Court to have jurisdiction under § 1331, it must be clear from the face of a well-pleaded complaint that there is a federal question; the federal issue must exist as part of the plaintiff's cause of action. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152-54 (1908). A federal right must be an essential element of the plaintiff's claim; "the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112-13 (1936). This rule also serves the essential administrative function of establishing the existence of a federal question at the onset of litigation. Miller, 76 Tex. L. Rev. at 1783. The well-pleaded complaint rule applies equally to original and removal jurisdiction and has prevented federal courts from asserting jurisdiction over many cases in which federal issues have actually been raised. *Id.* "This bright-line rule prevents the disruption, to both the system and the litigants, of shifting a case between state and federal fora in the middle of an action as federal issues arise or fall out." *Id.*

State courts, on the other hand, are courts of general jurisdiction. The Supreme Court has held that not only do state courts have the ability to hear federal claims, but that in all but the most exceptional circumstances they *must* hear federal claims. *See generally Testa v. Katt*, 330 U.S. 386 (1947) (establishing that state courts have a general obligation to hear federal claims). This ability and obligation of

state courts to hear federal claims and enforce federal law is derived from the Supremacy Clause of the U.S. Constitution.[3]

In the case before this court seeking to compel arbitration, federal jurisdiction is purportedly based upon defendant's state court *counter-claim* alleging illegal late fees and interest rates. There was no diversity jurisdiction and no federal question appeared on the face of the complaint. In affirming the district court, the majority undertook an examination of the state counterclaims using novel understandings of procedural rules as to parties[4] and a completely puzzling view of the doctrine of complete preemption. This process led the majority of this panel to agree with the district court that Ms. Vaden's *counterclaims* provided federal subject matter jurisdiction over the underlying case, and therefore an independent jurisdictional basis existed to permit the court to decide the petition to compel arbitration under the FAA. This was error. There was no "properly invoked federal question" in the underlying state case.

---

[3]The Supremacy Clause provides in pertinent part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

[4]The "party of interest" inquiry suggested in *Vaden I* was but another unnecessary detour which resulted in the parties, the district court, and the majority becoming procedurally lost. *Federal Rule of Civil Procedure* 17(a) states in pertinent part "[e]very action shall be prosecuted in the name of the real party in interest." I am puzzled by the majority's "real party in interest" analysis, which appears to be backward. A defendant can never be a real party in interest.

By its very nature, Rule 17(a) applies only to those who are *asserting* a claim. 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 1543 (2d ed. 1987) (emphasis added). The real party in interest requirement is not limited to original plaintiffs but must also be satisfied for purposes of *asserting* a counterclaim. *Id.* (emphasis added). Here the counterclaimant was Ms. Vaden. No part of Rule 17(a) suggests an inquiry into whether an entity might be a proper defendant. Quite generally people can and do sue whomever they intend. If Discover Financial Services believed it was not the proper party to be sued it could have filed a motion for summary judgment.

The Court in *Holmes Group, Inc. v. Vornado Air Circulation Systems*, 535 U.S. 826, 830 (2002), addressed the question of whether a counterclaim can serve as the basis for arising under jurisdiction. The Court held that it could not. The Court noted that the well-pleaded complaint rule has long governed whether a case "arises under" federal law for purposes of § 1331. *Holmes Group, Inc.*, 535 U.S. at 830 (citing *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127-128, (1974) (per curiam)). The Court stated, "a counterclaim — which appears as part of the defendant's answer, not as part of the plaintiff's complaint — cannot serve as the basis for 'arising under' jurisdiction." *Holmes Group, Inc.*, 535 U.S. at 831 (citing In re *Adams*, 809 F.2d 1187, 1188 n.1 (5th Cir. 1987); *FDIC v. Elefant*, 790 F.2d 661, 667 (7th Cir. 1986); *Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d 815, 822 (9th Cir. 1985); 14B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3722, pp. 402-414 (3d ed. 1998)). The Court concluded, "[f]or these reasons, we decline to transform the longstanding well-pleaded-complaint rule into the 'well-pleaded-complaint-*or-counterclaim* rule' urged by respondent." *Holmes Group*, 535 U.S. at 832 (emphasis in original).

The majority attempts to evade the clear holding in *Holmes Group* by misapplying the doctrine of complete preemption to counterclaims. The majority fails to recognize that complete preemption is solely a removal doctrine that is analytically applied to recharacterize allegations made in a plaintiff's *complaint*. The majority sets about its explication of its novel jurisdictional construct in footnotes two and three. *Op.* at 5, 6. An examination of these footnotes exposes the erroneous legal formulation upon which the majority opinion depends.

In footnote three, the majority acknowledges that complete preemption is a removal doctrine, stating, "[a]lthough complete preemption did originate in the removal context, we conclude that it also applies to the unique procedural posture of this case." *Op.* at 6 n.3. The majority offers as support for this proposition the following quote from *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987):

> On occasion, the Court has concluded that a preemptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

Contrary to the majority's apparent understanding, that passage makes plain that the doctrine of complete preemption has but one purpose — that is, the recharacterization of a *plaintiff's* state *complaint* so that it may be considered federal for the purposes of the well-pleaded complaint rule. The well-pleaded complaint rule states that, "a defendant may not remove a case to federal court unless the *plaintiff's complaint* establishes that the case 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 10 (footnote omitted; emphasis added). The complete preemption doctrine thus works to treat a plaintiff's state *complaint* as federal from its inception, thus permitting removal. "In the case of complete preemption . . . Congress 'so completely preempt[s] a particular area that any *civil complaint* raising this select group of claims is necessarily federal in character.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)) (emphasis added).

The majority's holding results in the adoption of a "*well-pleaded counterclaim rule*," rejected by the Court in *Holmes Group* as it would leave the acceptance or rejection of the state forum to the counterclaimant. "It would allow a defendant to remove a case brought in state court under state law, thereby defeating plaintiff's choice of forum, simply by raising a federal counterclaim." *Holmes Group*, 535 U.S. at 831. Or in the case of a dispute requiring arbitration, it would deprive the state court of its concurrent jurisdiction to enforce the FAA. *See Moses H. Cone*, 460 U.S. at 25, 25 n.32 (noting that "enforcement of the [FAA] is left in large part to the state courts").

Footnote three in the majority opinion concludes: "To hold otherwise would have the perverse result of returning to state court otherwise completely preempted federal claims because of the unanticipated nature of a defendant's counterclaims." *Op.* at 6 n.3. Not to quibble, but the counterclaims never left state court, as the case was not removed or removable. No accepted theory of federal jurisdiction would put this claim properly before a federal court. In any event, what the majority characterizes as a perverse result is an accurate description of our legal system and the overlapping jurisdiction of state and federal courts. Federal counterclaims are adjudicated in state court every day. (*See, e.g.*, *City & County of Honolulu v. Sherman*, 129 P.3d 542 (Haw. 2006) (adjudicating counterclaims based on

the federal Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)); *Villas West II of Willowridge v. McGlothin*, 841 N.E. 2d 854 (Ind. App. 2006) (adjudicating at trial Fair Housing Act counterclaim); *Salon Enterprises, Inc. v. Langford*, 31 P.3d 290 (Kan. App. 2000) (adjudicating FLSA counterclaims); *Wash. Suburban Sanitary Comm'n v. CAE-Lin Corp.*, 622 A.2d 745 (Md. 1993) (granting summary judgment as to § 1983 counterclaims)).

I completely disagree with the majority's conclusion in footnote three. I believe *Holmes Group* is controlling here. In an attempt to support its contention that *Holmes Group* does not contradict its conclusion, the majority misinterprets the text of Wright & Miller. The majority in footnote three, selectively quotes Wright & Miller. A key portions is omitted. The omission substantially distorts the textual discussion. In context this section of the treatise states (omitted portion in bold):

> In contrast, under the complete-preemption doctrine, which has been invoked in a significant—and ever-increasing—number of cases and contexts, a narrow class of claims are so "necessarily federal" that they always will permit removal to federal court. In these cases, federal law "not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting congress's intent to permit removal." **Thus, if a plaintiff files suit in state court based upon a state cause of action, and the defendant removes the case on the basis of complete preemption, the federal district court will recharacterize the plaintiff's state cause of action as a federal claim for relief, making the removal proper on the basis of federal question jurisdiction**. **In this sense**, the complete-preemption doctrine overrides such fundamental cornerstones of federal subject matter jurisdiction as the well-pleaded complaint rule and the principle that the plaintiff is master of the complaint.

14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722.1 at 508, 511 (3d ed. 1998) (emphasis added). Without omissions, the referenced passage makes clear that the doctrine of complete preemption is exclusively focused

on claims in a *plaintiff's complaint* and offers no support for the majority's jurisdictional theory.

Finally, I am constrained to say that I am troubled by the court's use of the FAA as a make weight for jurisdiction. The FAA was designed to make arbitration agreements as enforceable as other contracts, *but not more so*. *Prima Paint*, 388 U.S. 395, 404 n.12 (1967). It did not intend "to elevate [them] over other forms of contract." *Id.* The Supreme Court has made clear that the plain language of § 4 forbids federal courts from adjudicating the merits of the dispute to be arbitrated. Yet, this court interprets § 4 to require the district courts to address the underlying dispute carefully enough to determine whether it states a federal question. The federal court does this, not so that it can resolve any of the parties' rights or remedies under federal law, but simply so it can take subject matter jurisdiction of a § 4 FAA action that is often nothing more than an ordinary contract action. *Cmty. State Bank v. Strong*, ___ F.3d ___, 2007 WL 1225343, *13 (11th Cir. 2007) (J. Marcus concurring).

With respect, I believe the approach taken by the majority here, and the panel in *Vaden I*, is mistaken. *Vaden I* puts this court at odds with at least four of our sister circuits. *See Westmoreland Corp. v. Findlay*, 100 F.3d 263, 267-69 (2d. Cir. 1996); *Prudential-Bache Sec., Inc. v. Fitch*, 966 F.2d 981, 986-88 (5th Cir. 1992); *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 94 (6th Cir. 1997); *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 659 (7th Cir. 2006). The clear weight of authority is that § 4 does not make federal question jurisdiction over a petition to compel arbitration dependent on the nature of the underlying dispute to be arbitrated. *Community State Bank*, 2007 WL 1225343 at *12. Actions are regularly filed under the FAA, and the approach adopted by this court, finding federal question jurisdiction where the court is asked only to enforce a private contract, considerably, and in my view unjustifiably, expands federal court jurisdiction. *Community State Bank*, 2007 WL 1225343 at *12. I do not believe we should look beyond the face of the arbitration petition to determine jurisdiction.

The district court erred in determining it had subject matter jurisdiction. There is no properly invoked federal question in the underlying case. Therefore there is no independent basis for jurisdiction over

the suit seeking enforcement under the FAA. I would remand to the district court with instructions to dismiss the case for lack of subject matter jurisdiction.